### GEORGE JONES v. THE STATE.

*No. 7084.    Decided November 1.*

**1.    Murder—Charge of the Court.**—In a prosecution for murder it devolves upon the trial court as an imperative duty to instruct the jury upon the lower grades of homicide, if by any possible legitimate construction of the evidence they might convict of a homicide of a grade inferior to murder of the first degree.    In other words, it is only when the evidence totally fails to raise an issue of a lower degree of homicide than murder of the first degree that the trial court is relieved from charging upon a lower degree.

**2.    Same—Manslaughter.**—A homicide which results from a mere sudden, rash, and immediate design, springing from an inconsiderate impulse, passion, or excitement, however unjustifiable and unwarranted it may be, is not murder in the first degree. Such a homicide is not upon express malice, because the essential of that character of malice—a sedate and deliberate mind—is wanting.    Under these rules the evidence in this case demanded of the trial court instructions upon the law of murder of the second degree and of manslaughter; and in failing to give them the trial court erred. ·

APPEAL from the District Court of Milam.    Tried below before Hon. J. N. Henderson.

This conviction was in the first degree for the murder of Laura Jones. Death was the penalty assessed against the appellant.

The questions considered and determined upon this appeal do not require a fuller statement of the evidence than will be found summarized in the opinion.

It may be stated, however, that the identity of the man and woman who were seen together on the fatal night, walking from the direction of the defendant's house to the place where the body of the deceased was afterwards found, was clearly established; that of the defendant absolutely by his features, and that of the deceased by her clothes.    The woman seen going with the defendant toward the fatal spot on the fatal night was shown to have worn an old red hood, a gossamer, and a striped dress. ' Such articles of apparel were found upon the body of the deceased. The tracks of the man leading from the house of the defendant to the railroad crossing, and thence to the place in the woods where the body was found, were shown to correspond in size, shape, and peculiarity with

the shoes of the defendant; and the tracks of the woman, traversing the same ground, were shown to correspond with the shoes taken from the feet of the deceased. A cut across the throat with a sharp instrument was shown to be the cause of the woman's death. It was shown that the instrument with which that cut was inflicted came in contact with the bone in such a manner that such contact would almost inevitably turn the edge of the instrument. On the morning after the discovery of the dead body a razor was found concealed between the shingles of the roof of the defendant's house. The blade of that razor showed recent use, was gapped, and its edge was very much turned. At least one spot of discoloration, resembling blood, was found on the blade of the razor, and there was the imprint of a muddy finger on the handle. A spot of blood was found on one of the shoes of the defendant, and a spot which resembled blood was found on a necktie taken from the defendant's house. The coat that defendant was shown to have worn on the 13th day of the month—the day of the night that the deceased disappeared—was found in the defendant's house on the 16th. The said coat was intact on the 13th, but was much torn when found on the 16th. It was further shown that recently before the homicide, the defendant, replying to protests against his adulterous practices with one Hattie Patterson, declared his intention to never again live with the deceased; and finally it was shown that he took no part in the search for the deceased after her disappearance, and manifested no interest or concern in her fate.

*E. L. Antony,* for appellant.

*W. L. Davidson,* Assistant Attorney-General for the State.

WILLSON, Judge.—This conviction is for murder in the first degree, with the penalty assessed at death. Deceased had formerly lived with defendant as his wife, but for some months prior to her death they had not lived together in that relation, but had disagreed and separated, and the defendant had been consorting with another woman. On the evening of February 13, 1890, she was last seen alive. On the 16th, three days thereafter, her dead body was found in a thicket. Her throat was cut from ear to ear with some sharp instrument; her underlip was torn, and her front teeth were dislocated. At the place where her dead body was found were indications upon the ground that a struggle had taken place between her and her slayer. No witness testified to having seen the killing. It is a case of circumstantial evidence, the circumstances pointing strongly, and to our minds conclusively, to the defendant as the party who inflicted upon her the wound which caused her death. It is a case, however, in which the evidence presents not only the issue of murder in the first degree, but the issue of murder in the second degree and of manslaughter. It ap-

pears from the evidence that the deceased went to defendant's house; that from his house they traveled together several hundred yards to where her dead body was found, walking side by side, as indicated by their tracks. As before stated, at the place where the body was found there were indications that a struggle between the parties had taken place. On the day after the discovery of the dead body it was noticed that one of the defendant's fingers had been wounded, the wound presenting the appearance of having been inflicted by human teeth, as if the finger had been caught between the teeth and pulled or jerked out with great force.

It was also proved that a coat belonging to the defendant was found in his house shortly after the homicide, very much torn. It was the theory of the State that defendant had on this coat at the time of the homicide, and that it was torn by the deceased in her struggle with him.

A homicide which results from a mere sudden, rash, and immediate design springing from an inconsiderate impulse, passion, or excitement, however unjustifiable and unwarranted it may be, is not murder in the first degree. Such a homicide is not upon express malice, because the essential of that character of malice—a sedate and deliberate mind—is wanting. McCoy v. The State, 25 Texas, 33; Farrer v. The State, 42 Texas, 265; Atkinson v. The State, 20 Texas, 522; Duebbe v. The State, 1 Texas Ct. App., 159.

Now, in this case, if the defendant and the deceased engaged in an altercation and struggle, and the deceased seized the finger of the defendant with her teeth and was biting it, and the defendant, acting under the influence of inconsiderate impulse, passion, or excitement caused by the said act of the deceased, suddenly and rashly slew her, he would not be guilty of murder in the first degree, but would be guilty of murder in the second degree or of manslaughter, as the jury might determine from the evidence. If the injury inflicted upon his finger caused pain or bloodshed, and was inflicted by the deceased, the jury might consider this adequate cause to reduce the homicide to manslaughter.

It is well settled that in prosecutions for murder it is the imperative duty of the court to instruct the jury upon the lower degrees of homicide, if by any possible legitimate construction of the evidence they might convict of a lower degree. It is only when the evidence totally fails to raise an issue of a lower degree of homicide than murder in the first degree that the court is relieved from charging upon a lower degree. Blocker v. The State, 27 Texas Ct. App., 16; Neyland v. The State, 13 Texas Ct. App., 536; McLaughlin v. The State, 10 Texas Ct. App., 340.

While we do not question the sufficiency of the evidence in this case to warrant a conviction of murder in the first degree, we do say that, in our judgment, it presents the issues also of murder in the second degree and of manslaughter, and that those issues should have been submitted to the jury with appropriate instructions. This was not done, and because of

this failure of the trial judge to fully charge the law of the case, the judgement is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.

[NOTE.—Although decided at Tyler, this appeal pertains to the Austin branch of the court.—REP.]