Tobe Lewis v. The State.

No. 3327.    Decided November 15, 1905.

1.—**Murder in Second Degree—Dying Declaration—Predicate.**

See opinion for proper predicate laid for the admission of the dying declaration of deceased.

2.—**Same—Manslaughter—Charge of Court—Alibi.**

On trial for murder where the evidence suggested the issue of an alibi, upon which the court charged; and also that defendant had the right to believe that various parties were attempting to harm him or kill him at the time of the homicide, which was calculated to terrorize or anger him, and thus render his

mind incapable of cool reflection, and that under these circumstances he shot and killed deceased, the court should also have charged on manslaughter.

Appeal from the District Court of Burleson. Tried below before Hon. Ed. R. Sinks.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*R. J. Alexander, C. S. Williams, J. T. Carter,* and *J. T. Teague,* for appellant,—On question of manslaughter: Wallace v. State, 20 Texas Crim. App., 360; Johnson v. State, 22 Texas Crim. App., 206; Mackey v. State, 13 Texas Crim. App., 360; Meuly v. State, 26 Texas Crim. App., 274.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment fixed at confinement in the penitentiary for a term of ten years.

Appellant was a brakeman upon a railroad, running into the town of Somervelle. Other employees of the road, white people, resented the fact that negroes were permitted to work as brakemen on said road. Deceased and various others made threats against such negroes. These threats were known and communicated to defendant. On the evening of the homicide, as appellant came into the town where the killing occurred, his train was stopped at a side switch, and appellant got out of the caboose, went to the switch for the purpose of throwing it, in order that the train might enter the siding. While sitting there, unknown parties began shooting at him. He ran back to the caboose. The evidence for the State shows that he secured a winchester, and a short time thereafter a general fusillade of shots were fired at appellant and the other negro brakeman. The State's evidence further shows that appellant fired and killed deceased. Appellant's testimony is that he remained in the caboose all the while during the shooting, and did not have a gun and did not do any of the shooting. This, as we understand, is the substance of the evidence in this record.

Bill of exceptions number 1 complains that the court permitted the mother of deceased to testify, as follows: "I am the mother of deceased, Ben Long, and was with him for three days previous to his death. He realized that he was going to die, and stated he was conscious of his approaching death and had no hope of his recovery. He stated that defendant Tobe Lewis shot him." Appellant objected to this testimony on the ground that the proper predicate had not been laid for its admission as a dying declaration, and the statement of the witness did not bring said statement within the rule laid down for the admission of dying declarations. In this there was no error. The predicate was properly laid.

Bill number 2 complains that the court failed to charge on manslaughter, "because the evidence in the case shows that there had been trouble brewing between the white brakeman and negro brakman on the Santa Fe, at Somervelle, for some time previous to the difficulty; that deceased Long, was a white brakeman, and defendant a negro, working on said railway; and the evidence discloses the fact that on the evening or night in which Long was killed, there were two separate and distinct shootings. The first occurred about three-fourths of a mile below the depot at Somervelle, and this shooting was at the defendant Tobe Lewis, who had come in on a freight train from the Beaumont division of the Santa Fe, on which he was a brakeman. That he left his train, which had just come in, and went ahead for the purpose of throwing a switch, so that his train should enter the railway yards at Somervelle. These shots were fired at defendant as he ran back to his caboose; and several shots were fired into the caboose. The train pulled by the depot in the Somervelle yards. Appellant did not know the parties who fired these shots. Appellant and Griffin Brown (both negroes) were the only brakemen on the train. The second shooting took place at or near the depot in Somervelle, and was about forty-five minutes after the first shooting, and only a short while after the train, upon which defendant, was, passed the place at which the shooting first took place. Deceased was seen at or near where he was killed, just previous to the time, with a shot gun and a pistol. The evidence introduced by defendant shows that the first shots fired during the second shooting, were fired by deceased Long, who drew a shot gun on and fired at the brakeman Griffin Brown, and that afterwards there was a perfect fusillade of shots, during which time deceased received wounds from which he died." An examination of the evidence supports appellant's bill of exceptions, and shows that if appellant did the shooting, at the time of so doing he evidently was laboring under such degree of terror, rage, or resentment as rendered his mind incapable of cool reflection, or at any rate, this issue was very aptly presented by the testimony adduced on the trial. It is true, appellant swears to a state of facts showing an alibi; and it is further true, that this defense was properly presented in the charge. But appellant's testimony stands as that of any other witness. This being true, if the evidence suggested another issue than alibi, this issue should also have been charged. We therefore hold that the learned judge erred in not charging on the issue of manslaughter. The mere fact that appellant did not know deceased, would not preclude this issue. The evidence suggests that appellant had the right to believe that various parties were attempting to harm him, or kill him, because he was a negro and working as brakeman on the Santa Fe railroad. The moment the shots began to be fired at him, this fact merely confirmed him in his previous apprehension. It was calculated to terrorize or anger him, and therefore rendered his mind incapable of cool reflection; and if laboring under such a state of excitement, he shot and

killed deceased, he would not be guilty of any higher offense than manslaughter, since the evidence clearly shows that deceased was among the crowd attempting to bulldoze or intimidate the negroes and run them away from the service of the railroad.

Because of the failure of the court to charge on manslaughter, the judgment is reversed and the cause remanded.

*Reversed and remanded.*