## JOHN W. WILLIAMS v. THE STATE.

### No. 929.   Decided March 1, 1911.

**1.—Murder—Charge of Court—Self-Defense—Threats.**

Where, upon trial of murder, the evidence showed that the deceased attacked defendant and his brother, and that he had also made threats against the defendant, and the court's charges on self-defence were confusing in character and did not separate these matters and inform the jury in such way that they would understand definitely and fully the law of self-defense, both from the viewpoint of self-defense independent of threats, and self-defense viewed in the light of threats, the same was reversible error.

**2.—Same—Charge of Court—Standpoint of Defendant.**

Where, upon trial of murder, the court's charge on self-defense was so framed as to convey to the minds of the jury the impression that they must view the evidence from their standpoint instead of the standpoint of the defendant, the same was reversible error.

**3.—Same—Charge of Court—Resort to Other Means.**

Where, upon trial of murder, the evidence tended to show that the deceased attacked defendant with a view of inflicting death, it was reversible error to charge the jury that the defendant was required to resort to any means other than to defend himself as best he could.

**4.—Same—Charge of Court—Manslaughter—Adequate Cause.**

Where, upon trial of murder, the evidence showed that a few minutes before the killing defendant and deceased met and had an altercation, in which deceased applied vile epithets to the defendant, threatening to kill him, and telling him to arm himself, that the matter had to be settled that day between them; and also showed that there was great disparity of size and strength between the parties, deceased being much the larger and stronger man, etc., the court should have submitted a charge on manslaughter.

**5.—Same—Remarks by Judge.**

See opinion admonishing trial courts not to indulge in remarks in violation of the statute.

Appeal from the District Court of Potter. Tried below before the Hon. J. N. Browning.

Appeal from a conviction of murder in the second degree; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*W. W. Gatewood* and *J. E. Wharton* and *Knight & Slaton* and *Lumpkin, Merrill & Lumpkin,* for appellant.—On question of the court's charge on self-defense: Lundy v. State, 59 Texas Crim. Rep., 131, 127 S. W. Rep., 1032; Stevenson v. State, 17 Texas Crim. App., 618; Fuller v. State, 50 Texas Crim. Rep., 14, 95 S. W. Rep., 1039; Arnwine v. State, 50 Texas Crim. Rep., 254, 96 S. W. Rep., 4; Drake v. State, 45 Texas Crim. Rep., 273, 77 S. W. Rep., 7; Nix v. State, 45 Texas Crim. Rep., 504, 78 S. W. Rep., 227.

Upon the court's failure to affirmatively submit the issue of threats in his charge on self-defense: Pratt v. State, 50 Texas Crim. Rep., 227, 96 S. W. Rep., 8; Watson v. State, 50 Texas Crim. Rep., 171, 95 S. W. Rep., 115; Penton v. State, 53 Texas Crim. Rep., 323, 109 S. W. Rep., 937; Harris v. State, 105 S. W. Rep., 801; Cline v. State, 71 S. W. Rep., 23; Sebastian v. State, 42 Texas Crim. Rep., 84, 57 S. W. Rep., 820; Mitchell v. State, 50 Texas Crim. Rep., 150, 96 S. W. Rep., 43; St. Clair v. State, 49 Texas Crim. Rep., 479, 92 S. W. Rep., 1095; Swain v. State, 86 S. W. Rep., 335; Askew v. State, 59 Texas Crim. Rep., 152, 127 S. W. Rep., 1037; Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W. Rep., 64.

Upon the question of the court's failure to instruct on manslaughter: Jones v. State, 29 Texas Crim. Rep., 338, 15 S. W. Rep., 403; Moore v. State, 15 Texas Crim. App., 1; Casey v. State, 54 Texas Crim. Rep., 584, 113 S. W. Rep., 534; Arnwine v. State, 49 Texas Crim. Rep., 5, 90 S. W. Rep., 39; Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W. Rep., 64; Green v. State, 126 S. W. Rep., 860.

On question of remarks by judge: Simmons v. State, 55 Texas Crim. Rep., 441, 117 S. W. Rep., 141; Poole v. State, 45 Texas Crim. Rep., 348, 76 S. W. Rep., 565.

Upon question of admitting the testimony of witness Canfield as to threats against deceased by defendant: Pace v. State, 124 S. W.

Rep., 949; Brown v. State, 54 Texas Crim. Rep., 121, 112 S. W. Rep., 80; Fuller v. State, 54 Texas Crim. Rep., 454, 113 S. W. Rep., 540; Earles v. State, 47 Texas Crim. Rep., 559, 85 S. W. Rep., 1.

On question of admitting clothes of deceased in evidence: Melton v. State, 47 Texas Crim. Rep., 451, 83 S. W. Rep., 822; Cole v. State, 45 Texas Crim. Rep., 225, 75 S. W. Rep., 527; Adams v. State, 48 Texas Crim. Rep., 452, 93 S. W. Rep., 116; Lucas v. State, 50 Texas Crim. Rep., 219, 95 S. W. Rep., 1055; Tinsley v. State, 52 Texas Crim. Rep., 91, 106 S. W. Rep., 347; Puryear v. State, 50 Texas Crim. Rep., 454, 98 S. W. Rep., 258.

*C. E. Lane,* Assistant Attorney-General, and *Cowen, Berry & Goree,* for the State.—On the question of the court's failure to charge on manslaughter: Jirou v. State, 53 Texas Crim. Rep., 18, 108 S. W. Rep., 655; Jennings v. State, 132 S. W. Rep., 473; Lentz v. State, 48 Texas Crim. Rep., 2, 85 S. W. Rep., 1068; Mitchell v. State, 100 S. W. Rep., 930; Halbert v. State, 3 Texas Crim. App., 656.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at six years confinement in the penitentiary.

1. After giving some general definitions in regard to self-defense, the court thus applied the law:

"If you find from the evidence that defendant shot and killed John Armstrong for the purpose of preventing him from killing or doing serious bodily injury to Doby Williams and defendant, or either of them, and that it was necessary or reasonably appeared to defendant at the time to be necessary to kill John Armstrong in order to prevent him from then and there killing or doing serious bodily injury to Doby Williams and defendant, or either of them, then the killing would be justifiable and you will acquit him, and in this connection you are further charged that if you find from the evidence that threats against the life of defendant or defendant and Doby Williams were made prior to the homicide by the deceased and that the deceased at the time of the homicide did some act which was reasonably calculated in view of all the circumstances of the case to produce in the mind of the defendant the belief that the deceased was then about to execute such threat or threats the defendant would be justified in acting upon such appearance of danger, but threats afford no justification for the homicide unless you believe from the evidence that at the time of the killing the deceased by some act then done manifested an intention to then and there execute the threat or threats so made or it reasonably so appeared to the defendant, and if you find from the evidence that at the time defendant shot John Armstrong it was not necessary and did not reasonably appear to defendant to be necessary to then and there kill John Armstrong in order to prevent him from then and there killing or doing serious bodily injury to Doby

Williams and defendant or either of them, then the killing was not justifiable and you can not acquit the defendant."

Then follows this charge: "If you find from the evidence that John Armstrong assaulted Doby Williams and defendant or either of them in such manner and by such means as not reasonably to produce in the mind of defendant the expectation or fear of death or serious bodily injury, then defendant was entitled to use only such force as appeared to him to be reasonably necessary to repel such assault and he was required to resort to all other reasonable means to repel it except that of retreat, before he would be justified in taking the life of John Armstrong."

Various and divers objections were urged to these charges. A brief statement of the facts, in this connection, will show that there had been enmity between the deceased and appellant, and threats were proved as having been made by deceased against appellant and his brother Doby. It is also shown that deceased had sought to prosecute appellant for cattle theft, and that appellant had also sought to prosecute deceased for the same character of crime. There was a qualified threat shown as having been made by appellant against the hands of the cattle company, of which the deceased was manager, which was introduced as being broad enough to cover the deceased. Appellant was himself a ranch owner and shipper of cattle. Armstrong, the deceased, managed the Syndicate Cattle Company's ranch. On the morning preceding the homicide later in the day appellant had driven some cattle into the town of Bovinia for the purpose of selling some of them and shipping some. He had transferred or cut out of his bunch some of the cattle and delivered them to another party, and was holding the others near or against the fence in the edge of the town some distance away from the depot. Deceased went out where he was and an altercation occurred. The meeting was witnessed by several parties at a distance of three or four hundred yards. Appellant's version of that interview, in substance, was that deceased approached where he was holding his cattle; that they were both on their horses at a point something like a quarter of a mile south of where Armstrong was killed. At this meeting, according to appellant's version, Armstrong had applied a vile epithet to him, had threatened to kill him, and told him to go get his gun, that it had to be settled that day, and that he roped at him with a lariat. Appellant's horse at this juncture went backwards and perhaps reared up. They separated and appellant went home and got his gun. The deceased went in the direction of the depot. Appellant, en route to where his gun was, saw his brother Doby and mentioned to him that deceased had threatened to kill him. Doby said he thought perhaps he might talk with deceased and get the matter arranged. They separated, Doby going to the depot, where he found deceased. Deceased and Doby Williams soon engaged in an altercation. According to Doby's testimony deceased was entirely to blame for it. This inter-

view between deceased and Doby resulted in a fight· with their ropes. They were both cattlemen and carried ropes on their saddles for the purpose of roping cattle. They struck each other with their ropes doubled several blows. The deceased's hat was knocked off or fell off; he got down to secure it, and tried to secure a gun. Failing in this he pursued Doby Williams, who had ridden away some distance, fifty to seventy-five yards perhaps, and overtook him. They engaged in another fight with their ropes, some of the testimony showing that deceased was trying to throw his rope over the body of Doby Williams, when appellant, en route to his cattle, came in view of the parties, and immediately went to the scene. ·Immediately upon his reaching where his brother and deceased were he fired one shot, which resulted in the death of Armstrong. As is usual in matters of this sort, the testimony differs as to what occurred at the time, but it seems to be conceded that Doby Williams and deceased were fighting with their ropes. There is some evidence showing that deceased was trying to rope Doby Williams with a view of dragging him from his horse at the time that appellant shot. There is some evidence going to show that when appellant approached the parties that deceased separated from Doby Williams. Some of the testimony indicates that deceased may have intended to leave the scene of the trouble, while some of it is to the effect that he turned upon the appellant with a view of roping him, and it was at this juncture the shot was fired. The ball entered just in front of the right arm near the armpit, passed through the body, coming out on the left side behind the left shoulder, and about opposite the armpit on that side.

We are of opinion that the charge is subject to the criticism urged against it. The latter charge is rather a confused commingling of the law of self-defense with the law of threats, and bases the right of appellant to kill on what was necessary or reasonably appeared to defendant at the time to be necessary reason for the killing. We understand from the facts that there are four issues in regard to self-defense taken in connection with the law of threats raised by this testimony: First, appellant had the right to kill from the danger as it appeared to him from acts of deceased. In view of the threats communicated to appellant, and the recent altercation between them, and deceased undertaking to rope appellant and drag him from his horse, a charge was authorized on self-defense as applied personally to appellant. Second, if when he first observed the parties, deceased was beating his brother Doby with a rope, and when he got near him deceased undertook to rope and drag his brother from his horse with a view of inflicting death by this means on his brother, he was justified in killing in defense of his brother. Third, if when appellant approached deceased, deceased turned·upon him and sought to rope and drag him from his horse with a view of carrying out his threats he had the right to shoot in self-defense. Fourth, he had the same right to shoot in defense of his brother if deceased in execution of

his threats was undertaking to rope and drag him from his horse with a view of killing him. The charge as given does not clearly submit these issues. The appellant sought to correct these defects, but his charges were refused.

The trial court entertained the view and charged the jury to the effect that appellant would be entitled to his right of self-defense as applied to himself and his brother, but the charges are confused and do not separate these matters and inform the jury in such way that they would understand definitely and fully the law of self-defense as applied to the facts either as viewed from self-defense independent of the threats or self-defense viewed in the light of the threats. These charges should have been submitted separately and distinctly and affirmatively, and not in the confused negative way in which they were given. The charge also is not clear as to whether the court intended to convey to the minds of the jury that the necessity which is mentioned in the charge should be viewed from the standpoint of the jury as they saw the case at the time of the trial, or as defendant saw it at the time of the difficulty. The charge on self-defense must be clearly and affirmatively submitted as viewed from the defendant's standpoint, and not from that of the jury. The jury may have concluded from the testimony, especially as detailed by the State's witnesses at the time of the trial, that the appellant was not justifiable, but that is not the criterion. The criterion of self-defense is, the matter must be charged as viewed by the appellant at the time that he acted, and not in the light of subsequent events. The latter part of the quoted charge, in our judgment, should not have been given at all, that is, that appellant was required to resort to all other reasonable means to repel the threatened attack upon him. If the deceased attacked appellant with a view of roping him and dragging him from his horse, with the further view of thus inflicting death upon him, he was not required to resort to any means other than to defend himself in the best manner that he could. We think it was error to give that portion of the charge. 25 Texas Crim. App., 260, and numerous cases.

2. It is insisted that the court erred in not charging the law of manslaughter. We are of opinion that this contention is correct. To restate just enough of the testimony to bring this matter in review: Just a few moments before the killing, perhaps not more than five or ten minutes, the deceased and appellant met on horseback at a point something like a quarter of a mile south of where deceased was subsequently killed. During this interview Armstrong had applied a vile epithet to appellant, had threatened to kill him, had told him to arm himself, that the matter had to be settled that day between them, and had roped at him, and appellant had avoided being caught by the rope. The testimony shows that threats made by Armstrong had been communicated to appellant, and that at the moment of the killing deceased was doing the acts heretofore stated. It is also shown

that Armstrong had previously lodged a complaint against appellant charging him with cattle theft, and had him placed under bond; that this charge proved to be without merit; that there was great disparity in the size and strength of the parties, the deceased being a much larger and stronger man. We are of opinion that this called for a charge on manslaughter, and that there was error on the part of the court in not submitting this issue to the jury. These matters are sufficient to constitute adequate cause such as would justify the jury in arriving at the conclusion—self-defense apart—that appellant's mind may have been disturbed so that it was incapable of cool reflection from anger, rage, resentment, etc. Jones v. State, 29 Texas Crim. Rep., 338, 15 S. W. Rep., 403; Moore v. State, 15 Texas Crim. App., 1; Neyland v. State, 13 Texas Crim. App., 536; Black v. State, 41 S. W. Rep., 606; Hill v. State, 5 Texas Crim. App., 2; Casey v. State, 54 Texas Crim. Rep., 584, 113 S. W. Rep., 534; Young v. State, 41 Texas Crim. Rep., 442, 55 S. W. Rep., 331; Chambers v. State, 46 Texas Crim. Rep., 61, 79 S. W. Rep., 572; Tow v. State, 22 Texas Crim. App., 175, 2 S. W. Rep., 582; Hobbs v. State, 16 Texas Crim. App., 517; Arnwine v. State, 49 Texas Crim. Rep., 5, 90 S. W. Rep., 39; Halbert v. State, 3 Texas Crim. App., 656; Meuly v. State, 26 Texas Crim. App., 274, 9 S. W. Rep., 563; Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W. Rep., 64; Moore v. State, 26 Texas Crim. App., 322, 9 S. W. Rep., 610; Green v. State, 126 S. W. Rep., 860.

3. There are several bills of exception reserved to remarks of the court. These bills are qualified by the judge explanatory why he made the remarks. Some of these remarks, it occurs to us, are violative of the statute, but we pretermit a discussion and suggest that they should be avoided upon another trial.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

ON REHEARING.

April 19, 1911.

DAVIDSON, Presiding Judge.—At a former day of the term the judgment herein was reversed and remanded. Appellant, in the form of a motion for rehearing, asks the consideration of three bills of exception which were not discussed in the original opinion.

1. The first bill, which is No. 16, in the record, reserved exception to the testimony of the witness Canfield to the effect that there was some money held up for the sale of three head of cattle in regard to which the brand inspector had received a telegram to the effect that the cattle had been stolen. The witness testified that he told appellant that the money was held up in Kansas City and would go to the man to whom the cattle belonged. He further stated that he told appellant that three head had been cut out because they were

J. J. cattle and had the top burned over and made S. S. cattle. They were "burned cattle," and appellant said he was not at home at the time these cattle were branded; that he did not know they were stolen cattle; that he further said they had put him under a four thousand dollar bond, and that he did not see why witness was not arrested, and witness told him that the telegram stated that the man that shipped the cattle was innocent. Appellant said that he was satisfied that Armstrong was the man who sent the telegram to Kansas City. Armstrong was the deceased. The court explained this bill by stating that the witness was permitted to tell the whole of a conversation witness had with defendant, because it showed that defendant charged deceased with sending a telegram to Kansas City, stating that certain cattle bought by the witness from defendant were stolen, and that deceased had caused defendant to be arrested and put under bond for it; that in said conversation defendant said "he would kill some of the Syndicate sons-of-bitches," and maybe the rest of them would let him alone. The court further, in qualifying the bill, stated the evidence was clearly admissible as tending to show malice and threats by defendant against deceased. We are of opinion that some of the evidence mentioned was admissible. The threats of appellant were clearly admissible. Armstrong was the manager of the Cattle Syndicate Company. If Armstrong sent the telegram in regard to the cattle, which resulted in withholding the pay on the ground that the cattle were stolen and appellant took offense at this and made the threats, it was admissible evidence. Upon another trial, in admitting this testimony, the court should be cautious enough to admit none except that which went to explain why the threat was made, if in fact the threat was made by appellant against the cattle syndicate people. Inasmuch as Armstrong was the manager of it, and had had appellant arrested, we are of opinion he was sufficiently brought within the threat.

2. Another matter called to our attention is set forth in bill of exceptions No. 17. During the trial some of the clothing worn by deceased was admitted in evidence apparently upon the theory that it tended to solve the question as to the relation and position of the parties to each other at the time the shot was fired. The evidence was uncontradicted with reference to the location of the wounds. It shows the bullet entered the body in front of the right arm and was taken out just back of the left armpit; that the bullet passed through the great aorta, and the effect of such a wound was practically instant death. We are of opinion that the court should not have permitted the introduction of the coat. It could serve no useful purpose, and might have a tendency to injure. Clothing and matters of that sort are sometimes admissible, and sometimes not, owing to the peculiar facts of the case. This question has been discussed frequently and we do not know that we can add anything intelligently to what has been said. Wherever the clothing would serve to elucidate

any question before the jury, or throw light upon it where it is not clear, it may be admissible, but where it can not, and where the facts are clearly set forth independent of the clothing and bloody garments, the court should not permit the introduction of such things. In this case this coat could serve no useful purpose; it elucidated nothing. The wound, and the relation of the parties to each other, and the position, all indicated clearly that the matters about which the coat was introduced were fully understood. The introduction of the coat could serve no purpose to throw any light upon the relation of the parties or as to their position with reference to each other, as this was clearly shown beyond any question.

3. Another bill of exception was reserved to the ruling of the court permitting the State to introduce evidence of the reputation of the deceased inasmuch as the defendant had not placed such reputation in issue. The bill of exceptions is imperfect in this, that it does not show on its face whether threats had been made by Armstrong to kill appellant. It seems under our authorities that where threats have been made by the deceased, and these are relied upon by the accused upon the trial as a part of the defensive case, it is permissible for the State to introduce evidence of the reputation of deceased in regard to whether he is a dangerous and violent man or a man of a peaceable nature, whether the accused has placed such reputation in issue or not. If appellant had relied upon threats of Armstrong to take his life, and had placed these matters before the jury, then we are of opinion the State had the legal right to introduce evidence in regard to Armstrong's reputation in this respect. The statute does not confine this question to either side. The language is general that such reputation may be given in evidence. If upon another trial the threats of Armstrong to take the life of the accused are introduced in evidence, then either side can introduce testimony as to the reputation of the deceased as to whether he is a dangerous and violent man and likely to execute a threat, or on the contrary is a peaceable man.

At the instance of the accused in his motion to revise the opinion heretofore rendered, we have taken up these matters.