## John Steen v. The State.

No. 5899.   Decided October 27, 1920.

Rehearing Denied December 8, 1920.

1.—Murder—Negligent Homicide Second Degree—Charge of Court—Practice on Appeal.

Where, the court submitted the issues only of murder and negligent homicide in the second degree, the court's failure to instruct the jury in submitting the latter, that it must appear that there was apparent danger resuting from the unlawful act of defendant in firing the pistol, this failure may be corrected upon another trial, and is not very material error.

2.—Same—Manslaughter—Charge of Court.

Where, upon trial of murder and a conviction of that offense, the evidence raised the issue of manslaughter and a requested charge on manslaughter was refused, the same was reversible error.

3.—Same—Manslaughter—Rule Stated—Adequate Cause.

The causes named in our statute as adequate to reduce a homicide to mansaughter are well understood to be instances and not limitations, and when a killing takes place and there are circumstances in evidence from which such adequate cause might be inferred, the duty of the trial court is to submit such issue to the jury.

4.—Same—Manslaughter—Adequate Cause—Functions of Jury.

Whether said mental condition did so exist, and whether the causes in evidence were such as would be calculated to produce such passion in the mind of an ordinary person, are questions of fact for the jury and are not to be decided by the court.

5.—Same—Case Stated—Malice—Sudden Passion.

Where, the killing necessarily, in the instant case, was attributable either to malice, or sudden passion, the answer to this question, as to what mental state existed, could only be made by the jury and not by the court, since it was a fact issue and not a question of law, and the court should have submitted a charge on manslaughter.

6.—Same—Manslaughter—Rule Stated—Other Reasons Than Passion.

That manslaughter is not precluded by reason of the fact that defendant claimed a killing for other reasons than passion, is well established, is well settled.   Following Williams v. State, 61 Texas Crim. Rep., 356, and other cases.

7.—Same—Manslaughter—Statutory Causes—Other Causes—Rule Stated.

Other causes may produce manslaughter passion besides those named in the statute, and the trial judge is not the arbiter of the weight of the testimony suggesting such other causes, but must submit the matter to the jury.   Following Black v. State, 38 Texas Crim. Rep., 58, and other cases.

ᷛ —Same—Manslaughter—Rule Stated—Charge of Court.

Manslaughter should be charged by the court where the evidence raises a doubt as to whether same is in the case. Following Arnwine v. State, 49 Texas Crim. Rep., 5, and other cases.

9.—Same—Rehearing—Accident—Manslaughter—Charge of Court.

Where the State, upon rehearing, claimed that appellant did not claim an intentional killing on passion, but that his act, if the cause of death, was not so intended; held, that it was not necessary that the testimony of defendant be that which raises the issue of manslaughter. if the facts of the case fairly tend to indicate the homicide resulting from any such emotions of the mind, as renders it incapable of cool reflection, it becomes the duty of the trial court to submit manslaughter in his charge; and this even when the accused claimed the homicide to be an accident. Following Green v. State, 58 Texas Crim. Rep., 428, and other cases. .

10.—Same—Manslaughter—Charg. of Court—Murder—Presumption.

Where, upon trial of murder, the evidence raised the issue by the language and acts of the accused that there was passion arising from adequate cause, it was reversible error for the court to assume that defendant acted with a sedate and deliberate mind and to refuse to submit the issue of manslaughter. This was a question for the jury to decide.

Appeal from the District Court of Bexar. Tried below before the Honorable W. S. Anderson.

Appeal from a conviction of murder; penalty: death.

The opinion states the case.

*M. W. Terrell,* and *Chambers, Watson & Wilson,* for appellant.— On question of the court's charge on murder: Cotton v. State, 217 S. W. Rep., 159.

On question of the court's duty to apply the law to the facts: McPeak v. State, 187 S. W. Rep., 754; Howard v. State, 25 Texas Crim. App., 686; Brittian v. State, 36 Texas Crim. Rep., 411; McConnell v. State, 22 Texas Crim. App., 354; Talbot v. State, 58 Texas Crim. Rep., 324.

On question of manslaughter and court's duty to charge thereon: Pickins v. State, 218 S. W. Rep., 755; Nalls v. State, 219 id., 473. House v. State 171 id., 206; Boyd v. State, 180 id., 230; McCampbell v. State, 174 id., 348; and cases cited in opinion.

*Alvin M. Owsley,* Assistant Attorney General, *D. A. McAskill,* District Attorney and W. S. Anthony Assistant District Attorney, W. C. *Linden, for the State.*—On question of accident and charge on manslaughter; Wilson v. State, 60 Texas Crim. Rep., 1; Chant v. State, 166 S. W. Rep., 513; Johnson v. State, 167 id., 733 Lamb v. State, 169 id., 1158.

LATTIMORE, Judge.—This appellant was given the death penalty in the 37th District Court of Bexar County, for the murder of one Albert Tips. The death of young Tips was caused by a pistol shot fired on the streets of San Antonio, on the night of December 31, 1919.

With his mother, sister, and three brothers, deceased was riding in a car on the streets. It was New Year's Eve, and crowds of people were on the streets, making all the noise, in all the various ways with which such an occasion is often celebrated. Some of the Tips family had procured "bombs," about which the evidence seems to differ, which were small paper covered missiles, resulting in an explosion when thrown against hard objects. Throwing these bombs seemed one of the common forms of contributing to the general uproar on that night. Appellant, a negro, owned a new Dodge car, which was parked at a negro restaurant on that part of Commerce Street in said city, which was largely frequented by negroes. The Tips family passed by in their car, and at or about this time a bomb was thrown at appellant's car, and some damage was done to the paint where it struck and exploded. Whether this bomb came from the Tips' car, was a subject of dispute. Appellant and his witnesses claimed that it did. Be that as it may, manifestly appellant believed that it did, for he got into his car, pursued and overtook the Tips' car. What occurred then is also in much dispute, but for the purpose of deciding whether the law applicable was charged upon the trial, it may be stated that appellant claimed that when he overtook the Tips' car he then informed the occupants that they had damaged his car, and he further claims that thereupon two of the four young men who were in the car, got out, one of them having in his hand a car crank, and the other bombs which he threw at appellant and his car. It was in testimony by reputable witnesses that both the rear fenders of appellant's car, and on the right side of the hood, there were places where the paint was roughened, as though by being struck by some object. Appellant further testified that when he attempted to state to the Tips family the fact of the damages, that they refused to listen to him, and told him in substance, to go on away, that they did not want any argument with him; That the Tips' family started their car, going back in the direction of the thickly populated portion of the city, and that appellant got in his car and started after them, is undisputed. Appellant claimed that it was his purpose at that time to follow them until he could secure the assistance of an officer, but after going a little way he used his pistol for the purpose, as claimed by him, of shooting at a tire, hoping thereby to stop the machine in which the Tips were riding, until he could secure the assistance of some officer. After firing his pistol in the direction of the car, appellant turned off, and gave his pistol to another party, and went on where his family were.

Albert Tips was sitting on the rear seat of the car, and does not seem to have taken any part in the controversy whatever, He was shot in the back part of his head, causing instant death. Upon the trial, the court submitted the issues only of murder and negligent homicide in the second degree. Complaint is made of the fact that in submitting the latter, the court failed to instruct the jury that it must appear that there was apparent danger resulting from the unlawful act of appellant in firing the pistol. While we do not think this a very material error, it may be corrected upon another trial.

We think the trial court erred in not submitting the issue of manslaughter, Exception was taken to the charge for failure to submit said issue, and a special charge on the subject was asked. We think it must be admitted that the facts established that up to a few minutes before the unfortunate shooting, the parties were practically strangers. No suggestion appears that appellant followed the car of the Tips for any other reason except that he believed they had damaged his car as. they passed, and it is undisputed that within a moment or two after overtaking them, he fired his pistol toward their car. He testified that his intent in so doing was only to burst a tire, and that he had no intent to kill any one. If the jury had so believed, they would have found him guilty of negligent homicide. That they did not believe his story is evident. Granting that his story was false, then what have we? A shooting at a car in which were women and men, against whom appellant had no previous grudges or ill-feeling, except such as grew out of what occurred within ten minutes preceeding the use of the pistol. It is true that this is long enough for one to conceive malice, which would make him guilty of murder, but it is also true that the injury which he says he believed those people had inflicted upon his new car, coupled with what he says was their treatment of him when he sought them out, their renewal of the attack upon his car, and refusal to pay any attention to his demands, might be believed by the jury to have aroused such anger or resentment as to render his mind incapable of cool reflection, and that the shooting may have occured when he was in that mental condition which reduces homicide to manslaughter. At least it is clear that it is not for the trial court to say whether such mental condition existed. The causes named in our stat- as adequate to reduce a homicide to manslaughter, are well understood to be instances and not limitations. When a killing takes place, and there are circumstances in evidence from which such adequate cause and passion might be inferred, the duty of the trial court to submit such issue to the jury, is plain. whether said mental condition did so exist, and whether the causes in evidence were such as would be calculated to produce such passion in the mind of an ordinary person, are questions of fact for the jury, and are not to be decided by the court. When appellant fired at this carload of strangers, who was to say whether the act was caused by malice resulting in murder, or the

blind unreasoning passion that is manslaughter. If he did not fire at the automobile casing, and the case be not negligent homicide, then' the killing necessarily was attributable either to malice, or sudden passion. One of these mental states existed. Which was it? The answer to this question could only be made by the jury, and not by the court, since same was a fact issue and not a question of law. If the law of the two issues be fairly submitted, the jury may take the facts and conclude the matter by their verdict, but they cannot do this when only one of the two issues is given them in the charge.

That manslaughter is not precluded by reason of the fact that appellant claimed a killing for others reasons than passion. Williams v. State, 61 Texas Crim. Rep., 356, 136 S. W. Rep., 771; Green v. State, 58 Texas Crim. Rep., 428; Lee v. State, 54 Texas Crim. Rep., 385; miller v. State, 52 Texas Crim. Rep., 72, 105 S. W. Rep., 502; Rice v. State, 51 Texas Crim. Rep., 285; Nelson v. State, 48 Texas Crim. Rep., 274, 87 S. W. Rep., 143.

Other causes may produce manslaughter passion besides those named in the statute, and the judge is not the arbiter of that weight of the testimony suggesting such other causes, but must submit the matter to the jury. Black v. State, 38 Texas Crim. Rep., 58; Watson v. State, 50 Texas Crim. Rep., 175; Gilcrease v. State, 33 Texas Crim. Rep., 620; Williams v. State, 61 Texas Crim. Rep., 356; Bonner v. State, 29 Texas Crim. App., 230; Childers v. State, 33 Texas Crim. Rep., 509, In re Menly, 26 Texas Crim. App. 274.

Manslaughter should be charged where the evidence raises a doubt as to whether same is in the case. Arnwine v. State, 49 Texas Crim. Rep., 5, 90 S. W. Rep., 39; McLaughlin v. State, 10 Texas Crim. App., 340; Halbert v. State, 3 Texas Crim. App., 656; Thompson v. State, 24 Texas Crim. App., 383, 6 S. W. Rep., 296.

For the failure of the trial court to submit the issue of manslaughter, the case is reversed and remanded.

*Reversed and remanded.*

ON REHEARING.

December 8, 1920.

Lattimore, Judge.—The State moves for a rehearing herein, urging that we were in error in holding that the issue of manslaughter was raised by the evidence and should have been submitted in the charge to the jury. It is insisted that appellant did not claim an intentional killing on passion, but that his act, if the cause of death, was not so intended; that appellant's testimony negatived the existence of passion, if adequate cause existed; and it is urged in the motion that appellant did not testify to that state of mind which raises manslaugh-

ter. We cannot agree to this, even if the question of manslaughter were to be decided solely from the testimony of the accused, which is not the case. Appellant testified that the conduct and language of the Tips boys, just a moment before the shooting, greatly excited and scared him, and whether that was true was for the jury. However, it is not necessary that the testimony of the accused be that which raises the issue of manslaughter. Indeed, he may assert that the killing was attributable to another cause than passion, but if the facts of the case in evidence fairly tend to indicate a homicide resulting from any such emotion of the mind as renders it incapable of cool reflection, it becomes the duty of the trial court to submit manslaughter and leave to the jury the ascertainment of whether or not such killing was the result of such cause, and whether or not such cause was adequate. We have held manslaughter should have been submitted even though the accused claimed the homicide an accident. Green v. State, 58 Texas Crim. Rep., 428; also when he claimed it committed in self-defense, Williams v. State, 61 Texas Crim. Rep., 361; Lee v. State 54 Texas Crim. Rep., 385; Miller v. State, 52 Texas Crim. Rep., 78; also when he claimed an alibi, Lewis v. State, 48 Texas Crim. Rep., 614.

In the instant case, appellant's car was bombed by someone; several reputable witnesses so swore and no one disputed it. The car in which deceased was had just passed by. this is not questioned, No other reason is assignable for appellant's hurried following of the car in which deceased was. Appellant says that when the bomb was thrown from the car in which was deceased, he called out to the occupants that they were injuring his car, and their reply was: "Go to Hell, nigger." When he overtook their car a few moments later, its occupants testified that he said: "Come out here and look where you hit my car," and that to their statement that they had not run into his car, he replied: "Well, if one of you sons-of-bitches come out here I will show you," and that in a moment they started back to town, but had gone only a short distance when appellant overtook them, and fired his pistol at their car, killing deceased. When he used to them the language above attributed to him, he was addressing four white men, a woman, and a little girl, whom he had never seen before in his life. The question naturally arises, why did he follow them? Why use such language? Why invite the punishment ordinarily following the use of such language to another, and especially in the presence of ladies? For the trial court to arbitrarily hold that a negro, or white man either for that matter, who uses such language, under such circumstances, and almost immediately thereafter shoots and kills, has a sedate and deliberate mind such as is necessary to make a homicide murder, is not in keeping with our views. For the trial court to refuse to submit manslaughter under such circumstances is an assumption of the power to decide that the appellant was not acting from rage or passion, but was acting with a sedate and deliberate mind; when,

under all of our statutes and decisions, this power to so decide rests with the jury.

We have not undertaken to say whether the attendant circumstances showed this homicide to be murder or manslaughter; but we are undertaking to say that if a trial court, under facts like these, substitutes his decision where lies the exclusive province of the jury, the judgment cannot stand. Appellant may have committed an atrocious murder; he may merit death for his act, but he is entitled to a fair trial, in which the courts decide only the law and the jury the facts.

Being unable to agree with the contention of the State, its motion is overruled.

*Overruled.*