**Richard Charles JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–83–0263–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 24, 1986.

Michael B. Charlton, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., J. Harvey Hudson, Rusty Hardin, Harris County Asst. Dist. Attys., Houston, for appellee.

Before SAM BASS, COHEN and DUNN, JJ.

## OPINION

SAM BASS, Justice.

A jury found appellant guilty of murder, and the court assessed his punishment at life in prison. In four grounds of error, appellant contends that the trial court erred by failing to provide him with a complete statement of facts, by failing to have the court reporter transcribe four tape recordings offered into evidence and incorporated as his bill of exceptions, by excluding from evidence the four tape recordings, and by failing to give his requested charge on self-defense. We affirm.

Appellant was convicted of killing his former wife, Madelyn Johnson, by shooting her with a firearm. Appellant and Madelyn had been divorced approximately three months when the killing occurred on Monday morning, January 31, 1983. Several State's witnesses testified that appellant physically abused the deceased over the 20 years of their marriage.

Appellant's 12-year-old daughter, Maria testified that she had been visiting her father's house all weekend, and that she returned to her mother's house about 7:00 Sunday night. Maria testified that she and her mother were alone at the house when appellant arrived about 7:45 Monday morning. Madelyn was taking out the garbage and saw appellant drive up. She came back in the house and locked the front door. Maria testified that her father approached the front door and said, "Madelyn, open up the door." Madelyn replied, "No." Maria then saw her father to to a front window and bust it out. Madelyn told appellant to stop, and he did not come in the house at that time. Madelyn told Maria to get her gun, which Maria got from under her mother's bed. Maria brought the gun and put it in her mother's hand. When Madelyn told Maria to get her gun, appellant took his gun out of his pocket. When Maria gave her mother the gun, appellant shot his wife in the chest and Madelyn shot him in the hand. Maria "thinks" her father shot first. Maria, knowing her mother was shot, ran out the front door between her father and mother and went to a neighbor for help. While she was knocking on the neighbor's door, Maria observed appellant enter her mother's house, and she heard one or two more shots. Maria observed appellant come out of the house and get in his car. Appellant tried to wipe the blood from his wounded hand with a handkerchief. He moved the car into the driveway, got out and went back in the house. Maria heard one or two more shots. Maria further testified that her mother never beat her, nor displayed violence toward anyone.

A medical examiner testified that Madelyn had gunshot wounds in her chest, back and the little finger of each hand.

Appellant testified that his wife had been beating Maria the last few weeks before

her death and that Maria would call him crying over the telephone, and he could hear the licks over the phone. Appellant testified that Maria had returned home to her mother's house at about 1:30 p.m. Sunday, rather than at 7:00 as Maria had testified. He said that Maria called him back about 30 minutes after she arrived at her mother's house, complaining that her mother was beating her for nothing. Appellant said he could hear hollering and the licks over the phone. He said that he called the police, who told him it was a juvenile matter. Appellant testified that he called the juvenile department and was told that he must go over and check to see if the little girl had bruises on her. He testified that a juvenile officer told him she was giving him a "direct order" to check on the bruise marks. Appellant further testified that Maria called him again at 1:30 Monday morning, still crying and asking whether he was going to come and get her. He assured her that he would come in the morning.

Appellant testified that he went to his wife's house on the morning of the killing to see about Maria. He said he was carrying no gun. He said the front door was open when he arrived. He knocked on the door, and his wife said, "Come in." He entered and told his wife he came to see the bruises on Maria. He testified that his wife began shooting at him. He grabbed the barrel of the gun, tussled with her, got the gun away, and put it in his pocket. His wife then got another gun from a kitchen shelf and shot at him some more. Appellant testified that he was trying to get to the door to run out, and he stumbled over a table and fell into the front window and broke it. Appellant managed to get the second gun away from his wife and throw it in the kitchen. He said he exited the house through the window, got in his car and left without returning to the house. Appellant testified that he never shot his wife at all.

In his first two grounds of error, appellant complains of the trial court's refusal to order a transcription of four tape recordings that he offered into evidence. The State objected that the tape recordings were irrelevant and were hearsay. The trial court listened to the tapes in camera and sustained the State's objection. However, the court ordered the tapes admitted into evidence for purposes of the bill of exceptions. Appellant contends that he has been deprived of a complete statement of facts.

At the request of either party, the court reporter is required to take notes of all trial proceedings, including voir dire, objections to the charge, and final arguments. Tex.Code Crim.P.Ann. art. 40.09, § 4 (Vernon Supp.1986). When the court refuses to admit offered evidence, the party offering the evidence must be allowed to adduce the excluded evidence before the reporter and have it included in the record. Tex.Code Crim.P.Ann. art. 40.09 § 6(d)(1). Denial of a request to have a court reporter record all trial proceedings will result in a reversal. *Cartwright v. State*, 527 S.W.2d 535, 538–39 (Tex.Crim.App.1975). "When an appellant, through no fault of his or his counsel's, is deprived of a part of the statement of facts which he diligently requested, the appellate court cannot affirm the conviction." *Austell v. State*, 638 S.W.2d 888, 890 (Tex.Crim.App.1982).

The court reporter did not fail to take notes on any of the trial proceedings, and appellant has not been deprived of any part of the statement of facts. Appellant cites no case requiring court reporters to transcribe physical exhibits into the statement of facts. The purpose of taking notes of the proceedings in the trial court is to make it possible to review those proceedings. The tapes have been preserved and transmitted to this Court for review. The record of appellant's trial is complete.

Appellant argues that it is impossible to argue with clarity on appeal the portions of the tapes relevant to the issues on trial. Appellant's attorney had the tapes in his possession for some time after trial and could have referred this Court to any relevant portion by transcribing direct quotations in his brief and citing to the tape on

which the quotes were found. This he failed to do.

Appellant's first and second grounds of error are overruled.

Appellant next contends the trial court erred in excluding the tapes from evidence. Appellant testified that the tapes were of conversations between himself and the deceased and between himself and the couple's two daughters, Maria and Paula. Seventeen-year-old Paula did not testify at trial. Appellant testified that all the tapes were made in September or October of 1982, which would have been at least three months before the shooting. He subsequently testified that some of the tapes could have been made later. The tapes were recorded on a telephone answering recording machine.

> In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

Tex. Penal Code Ann. § 19.06 (Vernon 1974).

█ This Court has reviewed the tapes. The tapes show the discord that existed between appellant and the deceased. This was part of the previous relationship between the two, and at least some of the tapes were admissible on this ground. We find, however, that the error, if any, in excluding the tapes was harmless beyond a reasonable doubt.

Appellant argues that the tapes would show why he was in the deceased's house the morning of the shooting. To the contrary, the tapes show no reason for appellant to be there. He was asked by his wife and daughters not to come. The tape showed that appellant had severely beaten his wife, and she and the daughters were angry about it. His wife threatened to have her telephone number changed, apparently to escape appellant's harassing phone calls. The wife and daughters repeatedly told appellant that they did not want his money (with apparent references to the child support that would be incorporated in the final divorce decree).

█ Appellant argues that the tapes show the attitude of his wife and daughters toward him, and that the tapes should have been admissible on the issue of self-defense. The tapes show that his wife and daughters warned him of danger to his life from third persons, and one of the daughters personally threatened to kill him. No such threat by the wife is distinguishable on the tape. Appellant asserts on one tape that the deceased pulled a knife on him at some prior time, but his assertion is not supported by the other voices on the tape. The tapes lend no support to appellant's case.

Appellant's third ground of error is overruled.

Lastly, appellant contends that the trial court erred in failing to give his requested charge on self-defense. A defendant is entitled to a charge on every defensive issue raised by the evidence, and his testimony alone is sufficient to raise an issue. *Booth v. State,* 679 S.W.2d 498, 500 (Tex. Crim.App.1984); *Cain v. State,* 549 S.W.2d 707, 713 (Tex.Crim.App.1977), *cert. denied,* 434 U.S. 845, 98 S.Ct. 149, 54 L.Ed.2d 111.

All parties agree that self-defense was not raised by appellant's testimony or evidence. He denied shooting his wife at all, in self-defense or otherwise. He denied shooting a gun at all and denied bringing a gun with him into the home. He consistently and unequivocally denied doing any act that could have caused the victim's death. Thus, only the State's evidence could possibly have raised the issue of self-defense.

The right to use deadly force in self-defense is granted in chapter nine of the Penal Code. *See* Tex. Penal Code Ann. §§ 9.31, 9.32 (Vernon 1974 and Vernon Supp.1986). Section 9.02 provides: "It is a defense to prosecution that the conduct in

question is justified under this chapter." Tex. Penal Code Ann. § 9.02 (Vernon 1974). The general provisions governing statutory defenses in the Penal Code are set out in section 2.03, sub-section (c) of which provides:

> "The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense."

Tex. Penal Code Ann. § 2.03(c) (Vernon 1974). Since the defense of self-defense is governed by the general provisions of section 2.03(c), it is clear that no jury instruction concerning self-defense should be given unless evidence is admitted supporting the defense.

The Court of Criminal Appeals has recently spoken concerning when a statutory defense has been raised by the evidence. In *Sanders v. State*, 707 S.W.2d 78 (Tex. Crim.App.1986), the Court held:

> A perusal of the new Penal Code assures one that a defense does not merely negate an element of an offense. Rather, in all of the Code's defenses, one principle runs consistently throughout: *evidence which constitutes a defense requires the accused to admit the commission of the offense,* but to justify or excuse his actions so as to absolve him of criminal responsibility for engaging in conduct which otherwise constitutes a crime.

707 S.W.2d at 81 (emphasis supplied). The Court went on to consider whether the defendant, Sanders, was entitled to have the jury instructed on his defensive theory of good faith purchase, which he asserted at trial in order to explain his recent possession of property stolen in a burglary. The Court concluded that the defendant was not entitled to such an instruction. It wrote:

> We believe that appellant's testimony presenting a "defense of good faith purchase" negated his entire participation in the offense of burglary. In the circumstances of this case, therefore, his testimony did not justify participation in the offense; rather, it implicitly denied *any,*

participation. Such a denial does not constitute an affirmative defense requiring inclusion in the charge to the jury. The instruction was properly denied by the trial court.

707 S.W.2d at 81.

■ Appellant, like the defendant in *Sanders,* did not present evidence admitting commission of the offense, but presented evidence justifying or excusing his actions so as to absolve him of responsibility for conduct that otherwise constitutes a crime. Instead, like the defendant in *Sanders,* his defensive theory and evidence negated his entire participation in this killing. It did not justify participation; it denied *any* participation. We hold that appellant's total denial of any participation in the murder removed any requirement for a self-defense charge. *Sanders v. State,* supra. We note that no judge dissented in *Sanders* and that the judgment of the Court of Criminal Appeals is now final.

We further conclude that Texas cases prior to *Sanders* did not require a self-defense instruction in similar factual circumstances, although the rationale used in prior cases is far less clear. Cases have held that a defendant is entitled to an instruction on inconsistent defenses and on defenses raised by the State's testimony. *Booth v. State,* 679 S.W.2d at 500–01. Examples include *Warren v. State,* 565 S.W.2d 931, 933–34 (Tex.Crim.App.1978) (defendant's evidence showed self-defense and insanity); *Garcia v. State,* 492 S.W.2d 592, 595–96 (Tex.Crim.App.1973) (defendant testified to self-defense and accident); and *Roberson v. State,* 479 S.W.2d 931, 932 (Tex.Crim.App.1972) (defendant denied committing an assault, but was entitled to a self-defense instruction because he was criminally responsible for the acts of a co-conspirator, who testified to self-defense). These cases differ from the present case, because in each, the evidence of self-defense was raised by the defendant's testimony, the defendant's confession, or the defendant's witnesses. In each case, the defendant presented *inconsistent* evi-

dence, at one point asserting that he acted in self-defense and at another point denying that he acted in self-defense. In the present case, the defendant's evidence was wholly *consistent* that he never shot the victim in self-defense and never fired a gun at all, accidentally or intentionally, during this transaction.

It has frequently been held that defendants who denied intentionally killing a complainant were entitled to instructions on lesser included assaultive offenses. *Lugo v. State*, 667 S.W.2d 144 (Tex.Crim.App. 1984); *Thompson v. State*, 521 S.W.2d 621 (Tex.Crim.App.1974). However, both Lugo and Thompson testified that they were holding guns that fired accidentally at the victims. Both defendants admitted firing the shots that constituted the crime, but both denied *intent* to commit murder. Unlike appellant, neither Lugo nor Thompson presented consistent evidence that they fired no shots at all, at any time, in self-defense or otherwise. *See also Branham v. State*, 583 S.W.2d 782 (Tex.Crim.App.1979); *Moore v. State*, 574 S.W.2d 122 (Tex.Crim. App.1978); and *Steen v. State*, 88 Tex. Crim. 256, 225 S.W. 529 (1920), (all defendants admitted firing the deadly shots, but denied the intent to kill.) In *Shaw v. State*, 510 S.W.2d 926 (Tex.Crim.App.1974), the defendant was held entitled to instructions on the inconsistent defenses of self-defense and the paramour statute, but he admitted intentionally killing the victim. No defendant in any of the cases above consistently denied the killing, as appellant did.

Nor does *Merrit v. State*, 85 Tex.Crim. 565, 213 S.W. 941 (1919), clearly hold that appellant was entitled to a self-defense instruction. In *Merritt*, the defendant consistently denied having made any assault, but the trial court charged the jury on both accident and self-defense, based on the State's evidence. The Court of Criminal Appeals held that the self-defense charge erroneously stated that defendant had the right to act in self-defense only if his gun discharged accidentally. 213 S.W. at 942. The issue of inconsistent defenses was not mentioned in the opinion, and nothing indicates that the State argued that the self-de-

fense charge was unnecessary because the defendant had consistently denied shooting in self-defense or otherwise. Additionally, there was a separate and more important reason for reversing—insufficient evidence. Consequently, we do not view *Merritt* as an authoritative holding that a defendant who consistently denies any participation in the offense is entitled to a self-defense instruction.

■ We hold that while a defendant may get a jury instruction on inconsistent defenses, he may not consistently repudiate during trial a defense raised, if at all, only by the State's evidence and then rely on that defense in the jury charge. This is not a case like *Thompson, supra,* where the court held that the jury could have reasonably believed part of appellant's testimony and part of the State's testimony and put the parts together to raise an issue of self-defense. No rational jury in the present case could have done that, based on the utterly inconsistent evidence presented by the State and defense.

The State argues persuasively that appellant was not entitled to a jury instruction on self-defense, in that appellant, as a matter of law, had no right to use deadly force because: (1) he provoked the victim's use of allegedly unlawful force; (2) a reasonable person in appellant's possession would have retreated; and (3) the victim's use or attempted use of deadly force was lawful, because she obviously had a reasonable belief that her use of deadly force was immediately necessary to protect against appellant's use of unlawful deadly force. A finding by this Court that any of these conditions was proved, as a matter of law, would defeat appellant's right to a self-defense instruction. *See* Tex. Penal Code Ann. §§ 9.31(b)(4); 9.32. This argument was rejected in *Semaire v. State*, 612 S.W.2d 528 (Tex.Crim.App.1980), by a vote of 5 to 4, despite stronger facts supporting it than in the present case. In *Semaire*, the defendant, who was separated from his wife, went to her apartment, ignored her demands to leave, broke down the door,

entered the apartment without consent, and promptly shot his wife in the back. The wife was unarmed, as far as the opinion discloses, but she had threatened to shoot through the closed door at appellant, before he broke through. The majority in *Semaire* declined to hold that the wife's apparent use of force (which appellant claimed he thought he was resisting) would have been lawful, as a matter of law, or that the evidence conclusively showed that the defendant provoked the wife's attempted use of force. 612 S.W.2d at 531. The court held that these were jury issues, requiring an appropriate instruction on self-defense, and were not to be decided as a matter of law by a trial or appellate court. Thus, *Semaire* was reversed because the court wrongly denied a requested instruction on self-defense.

But for *Semaire*, we would overrule ground of error four for the reasons the State urges, in addition to those set out above.

Appellant's fourth ground of error is overruled.

The judgment is affirmed.