**Jesse Ray MUSICK, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–92–00055–CR.

Court of Appeals of Texas,
El Paso.

Sept. 15, 1993.

Thomas S. Morgan, Midland, for appellant.

John W. Smith, Dist. Atty., Odessa, for appellee.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

Jesse Ray Musick appeals from a conviction for the offense of possession of cocaine in an amount less than 28 grams. Upon a finding of guilt, the jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of four years and a fine of $10,000, both of which were probated. We reverse the trial court judgment.

## FACTS

At Musick's trial, Officer Jesse Duarte of the Odessa Police Department testified that on the afternoon of October 6, 1990, he and several other police officers executed a search warrant at apartment 45 of the La Casa Bonita Apartments in Odessa, Texas. Defense counsel established at trial that Toni Standefer was the lessee of this apartment; however, Musick and Standefer were both present in the living room of the apartment at the time of the search. Musick was wearing only underwear at the time the police entered Standefer's apartment.

Duarte testified that he searched the apartment's master bedroom and in a gray tote bag inside the closet, found a men's perfume bottle containing cocaine. According to Duarte, he took the tote bag into the living room of the apartment and after reading the *Miranda* warnings to Musick and Standefer, asked who owned the bag. In response to this question, Musick allegedly claimed the bag as his. Duarte next stated that the bag contained cocaine, to which Musick allegedly replied that he was unaware that the bag contained cocaine, but if it did, the cocaine belonged to him. Duarte testified that Musick further volunteered that he had a bad cocaine habit. The Odessa police arrested Musick for possession of cocaine.

### Fourth Requested Jury Instruction Refused

■ In his first point of error, Musick contends that the trial court erred in refusing to include his fourth requested jury instruction in the court's charge. Musick maintains that he was entitled to a jury instruction on the voluntariness of his oral statement regarding the cocaine found in Standefer's apartment since he timely requested the jury instruction and raised the lack of warnings as a factual issue during trial.

■ When properly requested, a defendant is entitled to a charge on every defensive theory raised by the evidence. *Smith v. State*, 676 S.W.2d 584, 586 (Tex.Crim.App. 1984); *Johnson v. State*, 715 S.W.2d 402, 405 (Tex.App.—Houston [1st Dist.] 1986), *pet. ref'd in* 738 S.W.2d 287 (Tex.Crim.App.1987). In determining whether the evidence raises the issue of a defensive charge, this Court must consider all of the evidence raised at trial, regardless of the strength of the evidence or whether it is controverted. *See Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim.App.1984); *Lerma v. State*, 807 S.W.2d 599, 601 (Tex.App.—Houston [14th Dist.] 1991, no pet.); *see also Smith*, 676 S.W.2d at 586–87. The defendant's testimony alone is sufficient to raise a defensive issue. *Johnson*, 715 S.W.2d at 405.

This point of error concerns Musick's alleged oral statement to Officer Duarte that Musick was the owner of the gray tote bag and that he did not know the bag contained cocaine, but if it did, the cocaine belonged to him. Duarte testified that he read Musick and Standefer their *Miranda* warnings before asking to whom the bag belonged. Musick claimed he was not read any warnings until he arrived at the police station. Musick requested a jury instruction to the effect that the jury could not consider his oral statement unless they believed from the evidence that the statement was freely and voluntarily given without compulsion or persuasion after the defendant was warned by the person to whom the statement was made.

■ At trial, Musick absolutely denied making the statements attributed to him regarding the ownership of the tote bag and any possible ownership of the cocaine found within the bag. He now argues on appeal that if he gave any type of incriminating statement, it was not done freely and voluntarily under the totality of the circumstances. A defendant may obtain a jury instruction on inconsistent defenses. *See Johnson*, 715 S.W.2d at 406–07. But a defendant may not consistently repudiate a matter during trial and then rely upon that defense in the jury charge. *Id.* We hold that Musick's complete denial that he made inculpatory oral statements to Duarte claiming ownership of the tote bag and cocaine in question removed any requirement of a charge on that issue. *See id* at 406. We overrule Point of Error No. One.

### Second Requested Jury Instruction Refused

■ In his second point of error, Musick contends that the trial court erred in refus-

ing to include his second requested jury instruction in the court's charge. This requested instruction provided in pertinent part:

> To prove possession of cocaine in a quantity of less than 28 grams the State of Texas must affirmatively link the Defendant to cocaine, in such a manner and to such an extent that a reasonable inference may arise that the Defendant knew of the existence of the cocaine and that he exercised control over such cocaine.

Musick argues that in failing to instruct the jury that the State must affirmatively link Musick to the cocaine, the trial court violated its duty to distinctly set forth the applicable case law in its jury charge. *See* TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp. 1993). The State responds that the submitted charge is sufficient since it sets forth the appropriate law and instructs the jury fully. When the court's charge taken as a whole sufficiently presents the applicable law and protects the defendant's rights, the resulting judgment will not be reversed on appeal. *Parker v. State,* 594 S.W.2d 419, 424 (Tex. Crim.App.1980). The charge submitted to the jury addressed affirmative link requirement in the following manner:

> Unlawful possession of a controlled substance such as Cocaine, requires the demonstration of two elements: (1) that the Defendant exercised care, custody, control, or management over the substance and (2) that the defendant knew the substance possessed was contraband. Possession of a controlled substance need not be exclusive. Evidence showing that the accused jointly possessed the controlled substance with another can sustain a conviction. However, the mere presence of an accused at the scene of an offense, or the fact that one has knowledge of an offense, does not make the accused a party to joint possession, nor is mere presence alone sufficient to convict of sole possession.

This language tracks *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim.App.1988), in which the Court of Criminal Appeals describes that which the State must establish to sustain a conviction for unlawful possession of a controlled substance. Examining the court's charge, we believe it adequately presented the applicable law and protected Musick's rights. We overrule Point of Error No. Two.

*Motion to Suppress*

In his third point of error, Musick contends that the trial court erred in denying his motion to suppress the evidence seized in the search of Standefer's apartment.

The trial judge is the sole and exclusive trier of facts at a hearing on a motion to suppress. *Romero v. State,* 800 S.W.2d 539 (Tex.Crim.App.1990); *Cannon v. State,* 691 S.W.2d 664 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Hawkins v. State,* 628 S.W.2d 71 (Tex.Crim.App.1982); *Green v. State,* 615 S.W.2d 700 (Tex.Crim.App.), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). On appeal, a reviewing court does not engage in its own factual review but decides whether the trial judge's fact findings are supported by the record. If so, this Court is not at liberty to disturb the trial court's findings and, on review, we address only the question of whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543; *Self v. State,* 709 S.W.2d 662 (Tex.Crim.App.1986); *Johnson v. State,* 698 S.W.2d 154, 159 (Tex.Crim.App. 1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). If the trial judge's decision is correct on any theory of law applicable to the case, it will be sustained. *Romero,* 800 S.W.2d at 543; *Spann v. State,* 448 S.W.2d 128 (Tex.Crim.App. 1969); *Moreno v. State,* 170 Tex.Crim. 410, 341 S.W.2d 455 (1960); *Calloway v. State,* 743 S.W.2d 645 (Tex.Crim.App.1988). This principle holds true even though the trial judge gives the wrong reason for his decision, *Salas v. State,* 629 S.W.2d 796 (Tex. App.—Houston [14th Dist.] 1981, no pet.), and is especially true with regard to the admission of evidence. *Romero,* 800 S.W.2d at 543; *Dugard v. State,* 688 S.W.2d 524 (Tex.Crim.App.1985). Furthermore, we must consider the totality of the circumstances in determining whether the trial court's findings are supported by the record, and the findings will not be disturbed absent

a clear abuse of discretion. *Dancy v. State,* 728 S.W.2d 772, 777 (Tex.Crim.App.), *cert. denied,* 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987).

When a defendant seeks to suppress evidence on the basis of a Fourth Amendment violation, the burden of proof is initially on the defendant. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986); *Mattei v. State,* 455 S.W.2d 761, 765–66 (Tex.Crim. App.1970); *see also State v. Wood,* 828 S.W.2d 471, 474 (Tex.App.—El Paso 1992, no pet.). As the movant in a motion to suppress evidence, a defendant must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State. *Russell,* 717 S.W.2d at 9; *Mattei,* 455 S.W.2d at 765–66; relying upon *United States v. Thompson,* 421 F.2d 373, 377 (5th Cir.1970) and *Rogers v. United States,* 330 F.2d 535 (5th Cir.), *cert. denied,* 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964). When the validity of a search is challenged and the State produces a warrant, the defendant must go forward to establish the warrant's invalidity on some ground such as lack of probable cause. *State v. Morgan,* 841 S.W.2d 494 (Tex.App.—El Paso 1992, no pet.).

In the present cause, Musick challenges the validity of the search warrant, arguing that the affidavit used to support the search warrant lacked probable cause to permit the issuance of the search warrant. At the hearing on Musick's motion to suppress, defense counsel introduced into evidence a copy of the affidavit supporting the search warrant in question. A review of that affidavit reflects that it described apartment 45 of the La Casa Bonita Apartments as the place to be searched, identified Musick and Standefer as the people in control of that apartment, and indicated that the affiant expected to find cocaine in the apartment. A first time informant tipped off Arlie Jones, the affiant, about the cocaine inside that apartment and subsequently made a controlled buy under Jones' direction. An attachment to the affidavit details the particulars of the controlled buy, indicating that Jones was in the vicinity of apartment 45 observing the controlled buy.

Musick posits twenty-one separate complaints about the affidavit, some of which are simply not supported by a review of the affidavit and its attachment,[1] and some of which do not appear necessary to a probable cause determination.[2] We specifically address Musick's complaint that although the informant was a first-time informant, the affidavit lacked a basis to determine the informant's reliability, credibility, and trustworthiness. While an affiant's conclusory statement that an informer is a "reliable and credible person" is not enough standing alone to establish an informer's reliability, *see Abercrombie v. State,* 528 S.W.2d 578, 581 (Tex.Crim.App.1974), the affidavit in the present cause indicates that the informant had accurate information about other local narcotics users and dealers from which the State deduced the informant was a credible source.

In reviewing a probable cause determination, this Court should interpret the affidavit in a realistic manner and avoid hypertechnical analysis. *Gibbs v. State,* 819 S.W.2d 821, 830 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992). This Court must base the review upon the evidence as a whole and afford great deference to the issuing magistrate's decision. *Morgan,* 841 S.W.2d at 498. Viewing the totality of the circumstances surrounding the issuance of the search warrant in the present cause, we cannot conclude that the trial court abused its discretion in denying Musick's motion to suppress. We overrule Point of Error No. Three.

### Batson Challenge

In Point of Error No. Four, Musick contends that the trial court erred in denying

---

1. For example, Musick contends that the State did not test the substance to insure that it was cocaine, whereas the attachment to the affidavit plainly states that the substance tested positive for cocaine.

2. For example, without citing substantiating case law, Musick complains of the fact that the affidavit does not contain a description of the inside of Standefer's apartment.

his *Batson* objection to the State's use of peremptory challenges to strike two black venirepersons.

It is well established that an accused is entitled to a trial by a jury whose members were selected on a racially-neutral, nondiscriminatory basis. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Wyle v. State,* 836 S.W.2d 796, 797 (Tex. App.—El Paso 1992, no pet.). In reviewing a *Batson* challenge on appeal, this Court must review the record in the light most favorable to the trial judge's rulings and apply a "clearly erroneous" standard of review. *See Williams v. State,* 804 S.W.2d 95, 101 (Tex. Crim.App.1991); *Wyle,* 836 S.W.2d at 797. If the record supports the trial judge's conclusion that the prosecutor exercised its peremptory challenges with no purposeful discrimination, we will not conclude that the trial judge's findings were clearly erroneous. *Id.*

The prosecutor's conduct in exercising his peremptory challenges is measured by the following three-part test:

(1) Did the appellant at the *Batson* hearing introduce sufficient evidence to establish a *prima facie* case that the State has engaged in purposeful racial discrimination by the use of peremptory challenges?;

(2) if so, has the prosecution come forward with a neutral explanation for challenging black jurors?; and,

(3) if the prosecution has sustained his burden of production, as specified, has the appellant continued to sustain his burden of persuasion in establishing purposeful racial discrimination by the State's use of peremptory challenges, thus rebutting any race neutral explanation given at the *Batson* hearing.

*Williams,* 804 S.W.2d at 101. In order to establish a *prima facie* case, the appellant must show: (1) that the excused venireperson was a member of a minority and (2) other relevant circumstances which raise an inference of discriminatory use of peremptory challenges. *Salazar v. State,* 818 S.W.2d

405, 408 (Tex.Crim.App.1991); *Wyle,* 836 S.W.2d at 797. The accused need not show that the accused and the venireperson are members of the same minority. *Id.* at n. 2.

The record reflects that at the *Batson* hearing, defense counsel objected that the State struck venirepersons 20 and 30, two of the four black venirepersons, *without asking a single question of these individuals.* The State responded that it struck Bobby Murray, venireperson number 20, because he was a truck driver. The prosecutor ascribed stereotypically to truck drivers having a tendency to use narcotics to keep themselves awake while driving and concluded that Murray therefore might not treat the offense in the present cause as a serious matter. The prosecutor justified striking Ms. Jessie McClain, venireperson number 30, on the basis of her age and her occupation as a line attendant. The prosecutor explained his concern that Ms. McClain's age and occupation might prevent her from understanding issues relevant to this cause such as joint possession, constructive possession, and actual possession.

The prosecutor's explanations for striking venirepersons must be clear, reasonably specific, and contain legitimate reasons related to the case being tried at the moment. *Williams,* 804 S.W.2d at 106. Here, the prosecutor's proffered explanations are ostensibly related to the issues in the present cause. But in *Keeton v. State,* 749 S.W.2d 861, 868 (Tex.Crim.App.1988), the Court of Criminal Appeals discussed the following nonexclusive list of factors which weighs against the legitimacy of a race-neutral explanation:

1. The reason for the peremptory challenge is not related to the facts of the case;

2. there was a lack of questioning to the challenged juror or a lack of meaningful questions;

3. disparate treatment in that persons with the same or similar characteristics were not struck;

4. disparate examination in that a challenged juror was questioned so as to evoke a certain response whereas other

panel members were not asked the same question; and

5. an explanation based on a group bias where the group trait is not shown to apply specifically to the challenged juror.

These factors tend to show that the reasons or explanations given by a prosecutor are merely a sham or a pretext. *Emerson v. State*, 851 S.W.2d 269, 273 (Tex.Crim.App. 1993); *Keeton*, 749 S.W.2d at 868. The Court of Criminal Appeals has stated that the presence of any *one* of these factors tends to weigh against the legitimacy of the State's race-neutral explanation for the use of peremptory strikes. *See Whitsey v. State*, 796 S.W.2d 707, 713 (Tex.Crim.App.1989).

On facts similar to those in the present cause, the Court of Criminal Appeals recently held that a prosecutor's explanation with respect to the peremptory challenge of a black venireperson was insufficient as a matter of law to rebut the defendant's *prima facie* showing of racial discrimination. In *Emerson v. State*, 851 S.W.2d 269 (Tex.Crim. App.1993), the Court of Criminal Appeals recently reviewed a situation wherein the prosecutor, in response to a *Batson* challenge, offered a racially-neutral explanation based on a group bias or group trait that was not found to apply specifically to the challenged juror. In *Emerson*, the prosecutor struck potential juror number 33 who was either a college student, college professor, or teaching assistant. *Id.* at 274. The prosecutor believed that persons in a collegiate environment are too liberal and, therefore, struck number 33 without asking any question to confirm whether this person had any of the liberal characteristics the prosecutor eschewed. *Emerson*, 851 S.W.2d at 274. The Court of Criminal Appeals stated that this occupation-based explanation for striking the prospective juror was not legitimate. *Id.* The prosecutor further stated that he struck potential juror number 33 because she was unemployed. *Id.* During the *Batson* hearing, defense counsel noted that the State failed to strike three non-black prospective jurors who indicated no employment status on their juror information sheets. *Id.* The Court of Criminal Appeals thus concluded

further that the State used a classification to eliminate prospective juror number 33 which it did not apply uniformly to the non-black veniremembers. *Id.*

The *Emerson* Court concluded that the State's explanations were insufficient as a matter of law to rebut Emerson's *prima facie* showing of racial discrimination in the jury-selection process. The Court held that the record did not support the trial judge's findings with respect to the use of a peremptory challenge against prospective juror number 33. *Id.* Because *Emerson* established that the State based at least one of its peremptory challenges solely on race, the Court concluded *Emerson* was denied due process and, accordingly, was entitled to a new trial. *Id.* at 274–75.

Certain factors which are not present in Musick's cause contributed to the analysis in *Emerson.* For example, when the prosecutor in *Emerson* proffered unemployment as a rationale for striking prospective juror number 33 from the panel, defense counsel countered that the State did not strike the three non-black venirepersons who listed no employment status. In the present cause, defense counsel made no attempt to overcome the State's explanations. Our analysis is hampered further by the fact that the appellate record does not contain copies of the juror information sheets or a list of the individuals on whom defense counsel and the State expended their peremptory challenges, although the record reflects that both items were offered into evidence at trial. Absent the juror information sheets and list of individuals struck by peremptory challenge, we are left with the statement of facts from *voir dire* and from the *Batson* hearing from which to determine the appropriateness of the State's peremptory challenges.

The record reflects that the State conducted a very brief *voir dire* that dealt primarily with the venirepersons' concerns about the war on drugs and their abilities to assess an appropriate sentence. The prosecutor addressed approximately five questions to the panel at large and directed questions to five specific individuals. Only once did the prosecutor ask a question touching on an individual's occupation. The State generally dis-

cussed the issue of joint possession during *voir dire*, but as noted, directed no questions to McClain to test her understanding of this issue.

We are unable to detect from the limited appellate record whether others working in the same or similar occupations as Murray and McClain were subjected to peremptory challenges. Nor can we tell if the State exercised challenges against others in the same approximate age group as McClain. Thus, we cannot conclude from the state of the record whether the State accorded disparate treatment to members of the venire with the same characteristics as Murray and McClain. We are nonetheless troubled that two of the suspect factors listed in *Keeton* are present in this cause: (1) there was a lack of questioning or a lack of meaningful questions to the challenged juror; and (2) the State gave an explanation based on a group bias where the group trait was not shown to apply specifically to the challenged juror. *Keeton*, 749 S.W.2d at 868.

The "clearly erroneous" standard of review is the standard applicable to *Batson* challenges. *Williams*, 804 S.W.2d at 101. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court is left with the definite and firm conviction that the trial court committed a mistake. *Whitsey*, 796 S.W.2d at 721, *quoting Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Because *Emerson* instructs that it is not legitimate to apply an occupation-based, group bias to a prospective juror without inquiring whether the bias applies specifically to the venireperson, we hold that the trial court erred in accepting the purported rationales for striking Murray and McClain in the present cause. We sustain Point of Error No. Four. Accordingly, Musick is entitled to a new trial.

### Informant Identity

■ In his fifth point of error, Musick contends that the trial court erred in refusing to reveal the identity of the informant used as a basis for issuing the search warrant. Musick argues that no confidential informant exists and, therefore, the search warrant was void because it was based on false information.

In *Bodin v. State*, 807 S.W.2d 313 (Tex. Crim.App.1991), the Court of Criminal Appeals reviewed the law relating to the informer identity privilege. The *Bodin* Court noted that before the enactment of Rule 508 of the Texas Rules of Criminal Evidence, a defendant could only compel disclosure of an informer's identity if the informant: (1) participated in the offense; (2) was present at the time of the arrest or the offense; or (3) otherwise was shown to be a material witness to the transaction or as to whether the defendant knowingly committed the offense charged. *Id.* at 317.[3]

Rule 508 is a broader rule for disclosure of an informant's identity than that which previously existed under state law. *See id.* at 317–18. The current rule allows the State to invoke its right to refuse to disclose the identity of an informant, but provides three exceptions. *See* TEX.R.CRIM.EVID. 508. Musick contends that 508(c)(2) and 508(c)(3) are the exceptions relevant to the present cause. Rule 508(c)(2) provides that an accused may be entitled to demand disclosure of the informant's identity if it appears from the evidence in the case or from a showing by the accused that the informant may be able to give testimony necessary to a fair determination of the issue of guilt. TEX.R.CRIM.EVID. 508(c)(2). Rule 508(c)(3) provides that if the State relies upon information from an informer to establish the legality of the means by which the State obtained evidence, the trial judge may require the State to disclose the informer's identity if the judge is not satisfied that the informer is reliable or credible. TEX.R.CRIM.EVID. 508(c)(3).

A defendant has the burden of proof of demonstrating that the informant's identity must be disclosed and *Bodin* addresses the

---

**3.** Citing *Rodriguez v. State*, 614 S.W.2d 448, 449 (Tex.Crim.App.1981), the State relied upon this outdated test as its sole reason why Musick was not entitled to disclosure of the confidential informant's identity. The State also argued, with-

out citing authority, that Texas Rules of Criminal Evidence 508(c) is a codification of *Rodriguez*. *Bodin* clearly indicates, however, that the above-cited test for informant disclosure is no longer the law. *Bodin*, 807 S.W.2d at 317–18.

amount of proof necessary for a defendant to show that the informant's testimony may be necessary to a fair determination of guilt or innocence. *Bodin,* 807 S.W.2d at 318. Citing relevant federal case law, the *Bodin* Court concluded that the informer's potential testimony must "significantly aid the defendant and mere conjecture or supposition about possible relevancy is insufficient." *Id.* The Court recognized, however, that because a defendant may not actually *know* the nature of the informant's testimony, the defendant should only be required to make a "plausible showing of how the informer's information may be important." *Bodin,* 807 S.W.2d at 318.

Musick contends that the State falsely claimed it relied upon a confidential informant since he knows that he did not sell cocaine to anyone within the forty-eight hour period before police obtained the warrant to search apartment 45. At trial, Musick explained that the only person who could possibly be the claimed confidential informant was an individual named Cliff Martin. Martin is the boyfriend of Musick's aunt, Elaine Flowers. Musick described how Martin held a grudge against him because he once turned Martin in to the police after an incident of domestic violence between Martin and Flowers. Musick claims that Martin and Flowers nevertheless stopped by apartment 45 to pay Musick an uncharacteristically friendly visit on the morning of October 6, 1990, the day of Musick's arrest. Musick testified that during that visit, Martin asked to use the bathroom which is located near the closet in which the police found cocaine later that day. Thereafter, Martin's attitude toward Musick changed and Martin quickly left the apartment. During closing argument, defense counsel argued that Martin had planted the cocaine and was the confidential informant upon which the Odessa police relied.

Musick did not provide anywhere near this amount of detail in his pretrial efforts to obtain disclosure of the informant's identity. In his motion to disclose the name of the confidential informant, Musick argued that the officers conducting the arrest could not have relied upon information supplied by a confidential informant and, therefore, falsely predicated probable cause for the search warrant on informer information. Musick claimed that he needed the name of the alleged informer to present proof that the officers in fact did not rely upon informer information as probable cause for the search warrant.

Musick's defense counsel was even less specific at the November 19, 1991 pretrial hearing on the motion to disclose. At that time, defense counsel simply argued without specificity that the informant could shed light on Musick's alleged possession of cocaine by providing testimony necessary to fair determination of guilt. The trial judge denied Musick's motion to disclose as based on speculative grounds. We agree.

■ As noted above, *Bodin* instructs that the defendant has the burden of proof of demonstrating that the informant's identity must be disclosed. *Bodin,* 807 S.W.2d at 318. Pretrial, Musick supplied nothing more than mere conjecture or supposition about how the informant's identity could aid his defense, which is insufficient to sustain Musick's burden of proof. *See id.* Had Musick's pretrial assertions contained the same level of specificity as did his trial testimony, he may well have obtained a different outcome at his hearing.

Moreover, we note that at Musick's trial, the defense called neither Martin nor Flowers in an attempt to substantiate Musick's theory that the State erroneously relied upon Martin as a confidential informant. In *United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), the United States Supreme Court held that the Sixth Amendment guarantees a defendant compulsory process for obtaining witnesses in his favor. Yet Musick points to nothing in the record to show that he made any attempt to invoke his right to compulsory process by filing an application for a subpoena for Martin or Flowers. *See* TEX.CODE CRIM.PROC. ANN. art. 24.03 (Vernon 1989).

Musick's assertion that the trial court erred in refusing to reveal the identity of the State's informant is without merit. We overrule Point of Error No. Five.

## Sufficiency of the Evidence

In his sixth and seventh points of error, Musick contends that the evidence was insufficient to sustain his conviction and the trial court therefore erred in refusing to grant Musick's motion for instructed verdict. Specifically, Musick argues that the State did not prove that he exercised care, control, and management over a substance that he knew to be contraband.

In reviewing the sufficiency of the evidence to support a criminal conviction, we are constrained to view all the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as alleged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Rodriguez v. State*, 819 S.W.2d 871, 872 (Tex.Crim.App.1991); *Enriquez v. State*, 826 S.W.2d 191 (Tex.App.—El Paso 1992, no pet.). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State*, 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Nor do we resolve any conflict of fact or assign credibility to the witnesses as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Instead, an appellate court's duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421–22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843, *quoting Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

In order to sustain a conviction for unlawful possession of a controlled substance, the State must establish (1) that the accused exercised care, control, and management over the contraband; and (2) that the accused knew the substance was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim.App.1988). The evidence must affirmatively link the accused to the controlled substance in such a manner and to such an extent, beyond mere presence, that a reasonable inference may arise that the accused knew of the existence of the controlled substance and that he exercised control over it. *Humason v. State*, 728 S.W.2d 363, 365 (Tex. Crim.App.1987).

Possession of contraband need not be exclusive to support a conviction for unlawful possession of a controlled substance. *Martin*, 753 S.W.2d at 387. When the accused is not in exclusive possession of the place where the substance is found, however, additional facts and independent circumstances must affirmatively link the accused to the contraband. *Johnson v. State*, 658 S.W.2d 623, 627 (Tex.Crim.App.1983). The State may establish this affirmative link by showing additional facts and circumstances that indicate the accused's knowledge and control of the contraband. *Guiton v. State*, 742 S.W.2d 5, 8 (Tex.Crim.App.1987). With these standards in mind, we will review the evidence in its proper light.

Musick argues that the evidence presented at trial does not affirmatively link him to the contraband. He notes that the cocaine was not in plain view, he did not attempt to flee the scene of the search, he made no furtive gestures toward the cocaine, he was not under the influence of drugs at the time of the search, and no fingerprints connect him to the cocaine. He further notes that he was not the lessee of apartment 45 and argues that he did not live there with Standefer.

The State contends that the record contains ample evidence of affirmative links between Musick and the cocaine from which the jury could conclude that Musick knowingly possessed the cocaine. Officer Duarte testified that when Duarte found the gray tote bag containing cocaine, Musick claimed the bag as his own and stated that any cocaine inside the bag was his. Although the evidence present showed that apartment 45 was leased to Toni Standefer and Musick had a separate lease for apartment 44 in the same complex, Officers Arlie Jones and Laura Smith, both of whom participated in the search leading to the present cause, testified

that Musick told them he was in the process of moving into apartment 45 with Standefer. Jones further testified that apartment 45 contained at least one piece of Musick's furniture.

Although at trial, Musick disputed the testimony of Duarte, Smith, and Jones, this Court must determine whether a trier of fact *could* have concluded from this combination of circumstances that Musick knowingly exercised care, custody, and control over the cocaine in the gray tote bag. The State's evidence links Musick to apartment 45 and links Musick to the cocaine via the incriminating statement Musick allegedly made to Duarte. Resolving any inconsistencies in favor of the verdict, we conclude that the evidence was sufficient to sustain Musick's conviction. We overrule Points of Error Nos. Six and Seven.

### Motion to Recuse

In his eighth point of error, Musick contends that the trial court erred in refusing to act on his motion to recuse the Honorable Gene Ater, the district judge presiding at Musick's trial. Musick's defense counsel filed this motion on February 20, 1992, and Musick's trial began five days later. Musick claims that the trial court completely failed to act on the motion to recuse and the State does not dispute Musick's claim. The basis for the recusal motion was that on February 14, 1992, Judge Ater allegedly stated in the presence of another attorney that Jesse Musick was not a credible person, thus indicating a bias against Musick.

The State counters that the trial court was not required to rule on the motion since it contained none of the grounds for disqualification listed in Article V, § 11 of the Texas Constitution or Article 30.01 of the Texas Code of Criminal Procedure. The State cites *Ricondo v. State,* 657 S.W.2d 439, 447 (Tex.App.—San Antonio 1983, no pet.), *citing Ex parte Largent,* 144 Tex.Crim.R. 592, 162 S.W.2d 419, 426 (1942), for the proposition that the grounds of disqualification stated in the Texas Constitution and Code of Criminal Procedure are exclusive. The Texas Constitution provides:

No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case....

TEX. CONST. art. 5, § 11 (Vernon 1993). Article 30.01 of the Code of Criminal Procedure similarly states:

No judge or justice of the peace shall sit in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity within the third degree....

TEX.CODE CRIM.PROC.ANN. art. 30.01 (Vernon Supp.1993). Although these provisions are mandatory, *Gamez v. State,* 737 S.W.2d 315, 318 (Tex.Crim.App.1987), they do not provide an exclusive list for purposes of recusal. In *McClenan v. State,* 661 S.W.2d 108, 109 (Tex. Crim.App.1983), the Court of Criminal Appeals held that bias may be a ground for judicial qualification where the "bias is shown to be of such a nature and to such an extent as to deny a defendant due process of law." *See also Cumpian v. State,* 812 S.W.2d 88, 91 (Tex.App.—San Antonio 1991, no pet.); *Elam v. State,* 841 S.W.2d 937, 939 (Tex. App.—Austin 1992, no pet.). Thus, the State incorrectly asserts that the trial judge was excused from ruling on Musick's motion since it was based upon a ground for disqualification not listed in Article V, § 11 of the Texas Constitution or Article 30.01 of the Texas Code of Criminal Procedure.

The State also asserts that Musick's motion was not timely filed. The record reflects that Musick filed his motion to recuse five days before trial began. In a civil case, a party filing a motion to recuse must do so ten days prior to the trial or a hearing. TEX. R.CIV.P. 18a. No similar provisions exist for criminal cases and, until very recently, there has been no clear answer as to whether the civil recusal rules apply in a criminal matter. *See State Ex Rel Millsap v. Lozano,* 692 S.W.2d 470, 481 (Tex.Crim.App.1985); *Cumpian,* 812 S.W.2d at 91. Recently, in *Arnold v. State,* 853 S.W.2d 543 (Tex.Crim.App.

1993), the Court of Criminal Appeals held explicitly that Texas Rules of Civil Procedure 18a applies to criminal cases. Rule 18a states that a motion for recusal must be filed at least ten days before the date set for trial or other hearing in a court. TEX.R.CIV.P. 18a. Because Musick did not comply with this ten-day notice provision, he may not complain of this matter on appeal. We overrule Point of Error No. Eight.

Having sustained Point of Error No. Four, we reverse the judgment of the trial court and remand this cause to that court for new trial.