NO. 07-02-0162-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 27, 2003

_____


KENDAL RAY SMITH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE


_____

FROM THE 182ND DISTRICT COURT OF HARRIS COUNTY;

NO. 881272; HONORABLE JEANNINE BARR, JUDGE

_____

Before QUINN and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

After appellant Kendal Ray Smith pleaded not guilty, a jury convicted him of possession of a controlled substance, cocaine, four to 200 grams, with intent to deliver. Appellant waived his right to a jury at punishment, and the trial court, finding both enhancement paragraphs in the indictment to be true, assessed a sentence of 25 years

confinement.  In two issues, appellant contends the evidence is:  (1) legally insufficient to support his conviction because "the State failed to affirmatively link [him] to the cocaine"; and (2) factually insufficient because "the State failed to prove [he] had exclusive possession or control over the cocaine."  Based upon the following rationale, we affirm.

Officers with the Houston Police Department executed a search warrant at 883 Lonnie Lane in Harris County, Texas, on July 3, 2001.  Upon entry into the house, officers observed appellant sitting at a table in the living room.  Another person was seated at the kitchen table, where, upon the officers' entry, he dropped what was later determined to be a baggie containing crack cocaine.  A third individual immediately dashed to the bathroom and attempted to flush more crack cocaine down the toilet.  Officers apprehended all three individuals, placed them in handcuffs, and escorted them outside while they searched the house.  When asked whether the house belonged to him, appellant replied "no," but volunteered that he stayed there "a lot" and received mail at that location.  Appellant further explained "all of his stuff was in there [one of the bedrooms], all of his personal items were there, and that's where he slept most of the time."

After securing the suspects, a narcotics detector dog and his handler entered the house and proceeded to search each room.  The dog alerted to a blue metal box located in the room where appellant claimed he slept.  On top of the box was a letter addressed to appellant and postmarked June of 2001.  The letter purported to be from appellant's brother. Inside the box officers located a large amount of crack cocaine.  In close proximity

2

to the box, laying on top of a Winnie the Pooh blanket, was a gun. Upon further inspection of the room, officers located many other pieces of mail addressed to appellant, including a letter from a collection agency dated November 26, 2000. Two of the individuals apprehended in the house were charged with possession of cocaine; while appellant was charged with possession with intent to deliver.

At appellant's trial in February of 2002, Officer William McPherson testified that for two months prior to executing the warrant he had conducted surveillance at the house on Lonnie Lane. During that time period, McPherson said he observed appellant at the residence "a majority of the time." He described the house as being situated in an "extremely high narcotics area." McPherson further testified the cocaine he recovered from the metal box located in appellant's room weighed 40.7 grams and had a street value as high as $4000. McPherson averred the normal unit of use for crack cocaine is .2 grams; therefore, in his opinion, the large quantity of cocaine attributed to appellant was intended for "delivery only." A forensic chemist with the Houston Police Department Crime Laboratory confirmed the substance seized from appellant's room contained cocaine.

At trial, appellant claimed he had only just arrived at the residence on Lonnie Lane when officers executed the warrant. He averred the cocaine in the metal box was not his, and he did not know that the other two individuals in the house possessed cocaine. Furthermore, appellant denied telling McPherson that "all of his stuff was in there"--the room where the cocaine was found. Appellant insisted he did not live at the house on

3

Lonnie Lane, and that the clothes located in the room with the cocaine were not his. Finally, appellant claimed he was at work during the time McPherson was conducting surveillance; therefore, the officer was "fabricating" when he testified he observed appellant "almost every day that [he] set up on the place."

By his first issue, appellant complains the evidence is "legally insufficient to support the verdict and no rational trier of fact could find that [he] knew of the cocaine and exercised control over it." In his second issue, appellant asserts the evidence is factually insufficient in large part because the "testimony of Officer McPherson was not credible and was contradicted by other officers and the Appellant." With both contentions, we disagree.

Discerning the gravamen of appellant's complaints is that the State failed to establish his intentional and knowing possession of the cocaine, we will examine the issues concurrently. In reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict, and ask whether a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Cr.App. 1999), *cert denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence,

4

and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 44 U.S. at 319.

In reviewing the factual sufficiency, we examine all of the evidence neutrally and ask whether proof of guilt is so obviously weak or greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. *See* King v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). We must also remain cognizant of the factfinder's role and unique position–one the reviewing court is unable to occupy. *See* Johnson v. State, 23 SW.3d 1, 11 (Tex.Cr.App. 2000). The jury determines the credibility of the witnesses and may believe all, some, or none of the testimony. Chambers v. State, 805 S.W.2d 459, 461 (Tex.Cr.App. 1991). It is the jury that accepts or rejects reasonably equal competing theories of a case. Goodman v. State, 66 S.W.3d 283, 287 (Tex.Cr.App. 2001). Finally, a decision is not manifestly unjust to the accused merely because the factfinder resolved conflicting views of evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex.Cr.App. 1997).

To establish possession of a controlled substance, the State must prove beyond a reasonable doubt that the defendant exercised care, custody, control, or management over the substance knowing it was contraband. *See* Tex. Health & Safety Code Ann. §§ 481.002 (38) & 481.112 (a) (Vernon 2003); *see also* King v. State, 895 S.W.2d 701, 703 (Tex.Cr.App. 1995). In a possession with intent to deliver case, the "intent to deliver" element may be proved by circumstantial evidence, such as the quantity of drugs

possessed, the manner of packaging, and the presence of the accused in a drug house. *See* Moss v. State, 850 S.W.2d 788, 797 (Tex.App.–Houston [14th Dist] 1993, pet. ref'd).

Control over the contraband need not be exclusive, but can be jointly exercised by more than one person.  Cude v. State, 716 S.W.2d 46, 47 (Tex.Cr.App. 1986).  When the accused is not in exclusive control of the place where the contraband is found, the State must show additional affirmative links between the accused and the contraband to show his knowledge of or control over the contraband. *Id.*  The affirmative link customarily emerges from an orchestration of several of a list of factors and the logical force they have in combination.  Whitworth v. State, 808 S.W.2d 566, 569 (Tex.App.–Austin 1991, pet. ref'd).  Possible affirmative links include: (1) whether the defendant was present when the drugs were found; (2) whether the drugs were in plain view; (3) whether the drugs were found in proximity to and accessible to the defendant; (4) whether the defendant was under the influence of drugs when arrested; (5) whether the defendant possessed other contraband or drug paraphernalia; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of drugs; (10) whether the defendant owned or had the right to possess the place where the drugs were found; (11) whether the place the drugs were found was enclosed; (12) the amount of drugs found; (13) whether the defendant possessed weapons; and (14) whether the defendant possessed a large amount of cash.  Taylor v. State, 106 S.W.3d 827, 832

6

(Tex.App.–Dallas 2003, no pet.). The trier of fact determines whether the factors presented at trial combine to form an affirmative link between the accused and the contraband sufficient to establish guilt beyond a reasonable doubt. Hall v. State, 86 S.W.3d 235, 241 (Tex.App.–Austin 2002, pet. ref'd). The factfinder makes this determination by examining the number and weight of the factors indicating control and lack of control of the contraband. *Id*.

The evidence in this case establishes affirmative links that raise reasonable inferences of appellant's knowledge and control of the cocaine. First, appellant was present at the Lonnie Lane house when it was searched. *See* Stubblefield v. State, 79 S.W.3d 171, 174 (Tex.App.–Texarkana 2002, pet. ref'd). Second, appellant told officers that, while he did not lease or own the house, he frequently spent the night, received mail there, and kept many personal belongings in the room where the cocaine was found. *See* Musick v. State, 862 S.W.2d 794, 805 (Tex.App.–El Paso 1993, pet. ref'd) (incriminating statement linked defendant to cocaine). Third, officers located numerous pieces of mail addressed to appellant in the room where the cocaine was discovered. Cooper v. State, 852 S.W.2d 678, 681 (Tex.App.–Houston [14th Dist.] 1993, pet. ref'd) (two envelopes addressed to defendant in room where drugs were found constituted affirmative link between defendant and drugs). One of the letters established appellant had at least a six-month connection to the house prior to the execution of the warrant. Another letter, from appellant's brother, was located on top of the box in which the cocaine was found. Fourth,

7

officers located men's clothing apparently belonging to appellant in the bedroom he occupied. Bryant v. State, 982 S.W.2d 46, 49 (Tex.App.–Houston [1st Dist.] 1998, pet. ref'd); *see also* Villegas v. State, 871 S.W.2d 894, 897 (Tex.App.–Houston [1st Dist.] 1994, pet. ref'd). Fifth, police observed activity at the residence consistent with narcotics trafficking for approximately two months before executing the warrant. *See* Classe v. State, 840 S.W.2d 10, 12 (Tex.App.–Houston [1st Dist.] 1992, pet. ref'd) (officer's testimony that he observed activity consistent with narcotics trafficking at defendant's house for approximately 10 days before warrant was executed constituted an affirmative link). Further, appellant was at the Lonnie Lane house a majority of the time McPherson conducted surveillance there. *Cooper*, 852 S.W.2d at 678. Sixth, officers discovered a gun in close proximity to the metal box where the cocaine was located. Taylor v. State, 106 S.W.3d 827, 831 (Tex.App.–Dallas 2003, no pet.). Seventh, the cocaine was found in an enclosed place, *i.e.* inside a metal box in a bedroom. *Stubblefield*, 79 S.W.3d at 174. Eighth, the large quantity of cocaine involved made it unlikely that its presence was accidental. Valencia v. State, 51 S.W.3d 418, 423 (Tex.App.–Houston [1st Dist.] 2001, pet. ref'd).

Appellant denies he made incriminating statements to McPherson and concludes that denial impugns McPherson's testimony. Additionally, he suggests the other officers who testified contradicted McPherson. As a result, McPherson is not credible and, without him, there are insufficient links to connect appellant to the cocaine. However, appellant

8

admitted at trial that he had two prior convictions for drug-related offenses, as well as unauthorized use, and burglary, of a vehicle convictions. The jury evaluated his credibility, in light of those admissions, along with that of McPherson and the other police officers. It was, therefore, the jury's prerogative to disbelieve appellant and accept McPherson's account as true.

Additionally, appellant maintains several of the affirmative link factors have no applicability to the evidence adduced at trial. While we agree with that assertion, we also acknowledge the number of factors present is less important than the logical force of those factors, alone or in combination, in establishing the elements of the offense. *Hall*, 86 S.W.3d at 241. We conclude the other factors detailed above strongly indicate he was, in fact, in possession of the cocaine with which he was charged.

Viewing the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found beyond a reasonable doubt that appellant possessed crack cocaine with an intent to deliver it. We further conclude the evidence is not so weak that the jury's verdict was clearly wrong and unjust, nor is the verdict so against the overwhelming weight of the evidence as to be clearly wrong and unjust. Appellant's two issues are overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis

9

Justice

Do not publish.