07-04-0001-CV





IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JULY 1, 2004


 

______________________________




BETTY ANN NEWBY, APPELLANT



V.



SHERIA ANN EVANS, ET AL., APPELLEE




_________________________________




Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

ORDER STRIKING MOTION


 On May 17, 2004, Betty Ann Newby (Newby) presented a Motion for Extension of
Time to File Motion for Rehearing to the clerk for filing. The motion did not set out an
appellate cause number in which the document was to be filed. 

 By letter dated May 28, 2004, the clerk advised Newby that the motion had not been
filed with the papers of any appeal because the motion lacked designation of the appeals
in which it was to be filed. The clerk's letter also advised Newby that the court had directed
the motion to be redrawn; that the redrawn motion was to designate an appellate cause
number in which the motion was to be filed; and that failure to file the redrawn motion on
or before June 11, 2004, would result in the motion being stricken.

 On June 29, 2004, Newby filed a Motion to Extend Time to File Redrawn Motion. 
Such Motion to extend time is denied. No redrawn motion has been filed. The motion is
stricken. 

 On June 28, 2004, Newby filed a Motion for Extension of Time to File Motion for
Rehearing. The Motion is properly captioned and designated. Such motion is not stricken
by this order, but will be addressed via letter from the court clerk. 

 The clerk is directed to file a copy of this order in each appellate cause now pending
or which has been pending in this court during calendar year 2004 and in which Newby is
or has been a named party. 

 Per Curiam.



own the toilet. Officers apprehended all three
individuals, placed them in handcuffs, and escorted them outside while they searched the
house. When asked whether the house belonged to him, appellant replied "no," but
volunteered that he stayed there "a lot" and received mail at that location. Appellant
further explained "all of his stuff was in there [one of the bedrooms], all of his personal
items were there, and that's where he slept most of the time." 

 After securing the suspects, a narcotics detector dog and his handler entered the
house and proceeded to search each room. The dog alerted to a blue metal box located
in the room where appellant claimed he slept. On top of the box was a letter addressed
to appellant and postmarked June of 2001. The letter purported to be from appellant's
brother. Inside the box officers located a large amount of crack cocaine. In close proximity
to the box, laying on top of a Winnie the Pooh blanket, was a gun. Upon further inspection
of the room, officers located many other pieces of mail addressed to appellant, including
a letter from a collection agency dated November 26, 2000. Two of the individuals
apprehended in the house were charged with possession of cocaine; while appellant was
charged with possession with intent to deliver. 

 At appellant's trial in February of 2002, Officer William McPherson testified that for
two months prior to executing the warrant he had conducted surveillance at the house on
Lonnie Lane. During that time period, McPherson said he observed appellant at the
residence "a majority of the time." He described the house as being situated in an
"extremely high narcotics area." McPherson further testified the cocaine he recovered
from the metal box located in appellant's room weighed 40.7 grams and had a street value
as high as $4000. McPherson averred the normal unit of use for crack cocaine is .2
grams; therefore, in his opinion, the large quantity of cocaine attributed to appellant was
intended for "delivery only." A forensic chemist with the Houston Police Department Crime
Laboratory confirmed the substance seized from appellant's room contained cocaine. 

 At trial, appellant claimed he had only just arrived at the residence on Lonnie Lane
when officers executed the warrant. He averred the cocaine in the metal box was not his,
and he did not know that the other two individuals in the house possessed cocaine. 
Furthermore, appellant denied telling McPherson that "all of his stuff was in there"--the
room where the cocaine was found. Appellant insisted he did not live at the house on
Lonnie Lane, and that the clothes located in the room with the cocaine were not his. 
Finally, appellant claimed he was at work during the time McPherson was conducting
surveillance; therefore, the officer was "fabricating" when he testified he observed
appellant "almost every day that [he] set up on the place."

 By his first issue, appellant complains the evidence is "legally insufficient to support
the verdict and no rational trier of fact could find that [he] knew of the cocaine and
exercised control over it." In his second issue, appellant asserts the evidence is factually
insufficient in large part because the "testimony of Officer McPherson was not credible and
was contradicted by other officers and the Appellant." With both contentions, we disagree. 

 Discerning the gravamen of appellant's complaints is that the State failed to
establish his intentional and knowing possession of the cocaine, we will examine the
issues concurrently. In reviewing legal sufficiency, we view the evidence in the light most
favorable to the verdict, and ask whether a rational trier of fact could find the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319,
99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In our review, we must evaluate all of
the evidence in the record, both direct and circumstantial, whether admissible or
inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Cr.App. 1999), cert denied, 529
U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence,
and to draw reasonable inferences from basic facts to ultimate facts. Jackson, 44 U.S. at 
319. 

 In reviewing the factual sufficiency, we examine all of the evidence neutrally and
ask whether proof of guilt is so obviously weak or greatly outweighed by contrary proof as
to indicate that a manifest injustice has occurred. See King v. State, 29 S.W.3d 556, 563
(Tex.Cr.App. 2000). We must also remain cognizant of the factfinder's role and unique
position-one the reviewing court is unable to occupy. See Johnson v. State, 23 SW.3d
1, 11 (Tex.Cr.App. 2000). The jury determines the credibility of the witnesses and may
believe all, some, or none of the testimony. Chambers v. State, 805 S.W.2d 459, 461
(Tex.Cr.App. 1991). It is the jury that accepts or rejects reasonably equal competing
theories of a case. Goodman v. State, 66 S.W.3d 283, 287 (Tex.Cr.App. 2001). Finally,
a decision is not manifestly unjust to the accused merely because the factfinder resolved
conflicting views of evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410
(Tex.Cr.App. 1997). 

 To establish possession of a controlled substance, the State must prove beyond a
reasonable doubt that the defendant exercised care, custody, control, or management over
the substance knowing it was contraband. See Tex. Health & Safety Code Ann. §§
481.002 (38) & 481.112 (a) (Vernon 2003); see also King v. State, 895 S.W.2d 701, 703
(Tex.Cr.App. 1995). In a possession with intent to deliver case, the "intent to deliver"
element may be proved by circumstantial evidence, such as the quantity of drugs
possessed, the manner of packaging, and the presence of the accused in a drug house. 
See Moss v. State, 850 S.W.2d 788, 797 (Tex.App.-Houston [14th Dist] 1993, pet. ref'd). 

 Control over the contraband need not be exclusive, but can be jointly exercised by
more than one person. Cude v. State, 716 S.W.2d 46, 47 (Tex.Cr.App. 1986). When the
accused is not in exclusive control of the place where the contraband is found, the State
must show additional affirmative links between the accused and the contraband to show
his knowledge of or control over the contraband. Id. The affirmative link customarily
emerges from an orchestration of several of a list of factors and the logical force they have
in combination. Whitworth v. State, 808 S.W.2d 566, 569 (Tex.App.-Austin 1991, pet.
ref'd). Possible affirmative links include: (1) whether the defendant was present when the
drugs were found; (2) whether the drugs were in plain view; (3) whether the drugs were
found in proximity to and accessible to the defendant; (4) whether the defendant was under
the influence of drugs when arrested; (5) whether the defendant possessed other
contraband or drug paraphernalia; (6) whether the defendant made incriminating
statements when arrested; (7) whether the defendant attempted to flee; (8) whether the
defendant made furtive gestures; (9) whether there was an odor of drugs; (10) whether the
defendant owned or had the right to possess the place where the drugs were found; (11)
whether the place the drugs were found was enclosed; (12) the amount of drugs found;
(13) whether the defendant possessed weapons; and (14) whether the defendant
possessed a large amount of cash. Taylor v. State, 106 S.W.3d 827, 832
(Tex.App.-Dallas 2003, no pet.). The trier of fact determines whether the factors
presented at trial combine to form an affirmative link between the accused and the
contraband sufficient to establish guilt beyond a reasonable doubt. Hall v. State, 86
S.W.3d 235, 241 (Tex.App.-Austin 2002, pet. ref'd). The factfinder makes this
determination by examining the number and weight of the factors indicating control and
lack of control of the contraband. Id. 

 The evidence in this case establishes affirmative links that raise reasonable
inferences of appellant's knowledge and control of the cocaine. First, appellant was
present at the Lonnie Lane house when it was searched. See Stubblefield v. State, 79
S.W.3d 171, 174 (Tex.App.-Texarkana 2002, pet. ref'd). Second, appellant told officers
that, while he did not lease or own the house, he frequently spent the night, received mail
there, and kept many personal belongings in the room where the cocaine was found. See
Musick v. State, 862 S.W.2d 794, 805 (Tex.App.-El Paso 1993, pet. ref'd) (incriminating
statement linked defendant to cocaine). Third, officers located numerous pieces of mail
addressed to appellant in the room where the cocaine was discovered. Cooper v. State,
852 S.W.2d 678, 681 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd) (two envelopes
addressed to defendant in room where drugs were found constituted affirmative link
between defendant and drugs). One of the letters established appellant had at least a six-month connection to the house prior to the execution of the warrant. Another letter, from
appellant's brother, was located on top of the box in which the cocaine was found. Fourth,
officers located men's clothing apparently belonging to appellant in the bedroom he
occupied. Bryant v. State, 982 S.W.2d 46, 49 (Tex.App.-Houston [1st Dist.] 1998, pet.
ref'd); see also Villegas v. State, 871 S.W.2d 894, 897 (Tex.App.-Houston [1st Dist.] 1994,
pet. ref'd). Fifth, police observed activity at the residence consistent with narcotics
trafficking for approximately two months before executing the warrant. See Classe v.
State, 840 S.W.2d 10, 12 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (officer's testimony
that he observed activity consistent with narcotics trafficking at defendant's house for
approximately 10 days before warrant was executed constituted an affirmative link). 
Further, appellant was at the Lonnie Lane house a majority of the time McPherson
conducted surveillance there. Cooper, 852 S.W.2d at 678. Sixth, officers discovered a
gun in close proximity to the metal box where the cocaine was located. Taylor v. State,
106 S.W.3d 827, 831 (Tex.App.-Dallas 2003, no pet.). Seventh, the cocaine was found
in an enclosed place, i.e. inside a metal box in a bedroom. Stubblefield, 79 S.W.3d at 174. 
Eighth, the large quantity of cocaine involved made it unlikely that its presence was
accidental. Valencia v. State, 51 S.W.3d 418, 423 (Tex.App.-Houston [1st Dist.] 2001, pet.
ref'd). 

 Appellant denies he made incriminating statements to McPherson and concludes
that denial impugns McPherson's testimony. Additionally, he suggests the other officers
who testified contradicted McPherson. As a result, McPherson is not credible and, without
him, there are insufficient links to connect appellant to the cocaine. However, appellant
admitted at trial that he had two prior convictions for drug-related offenses, as well as
unauthorized use, and burglary, of a vehicle convictions. The jury evaluated his credibility,
in light of those admissions, along with that of McPherson and the other police officers. 
It was, therefore, the jury's prerogative to disbelieve appellant and accept McPherson's
account as true. 

 Additionally, appellant maintains several of the affirmative link factors have no
applicability to the evidence adduced at trial. While we agree with that assertion, we also
acknowledge the number of factors present is less important than the logical force of those
factors, alone or in combination, in establishing the elements of the offense. Hall, 86
S.W.3d at 241. We conclude the other factors detailed above strongly indicate he was,
in fact, in possession of the cocaine with which he was charged.

 Viewing the evidence in the light most favorable to the prosecution, we conclude
a rational trier of fact could have found beyond a reasonable doubt that appellant
possessed crack cocaine with an intent to deliver it. We further conclude the evidence is
not so weak that the jury's verdict was clearly wrong and unjust, nor is the verdict so
against the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Appellant's two issues are overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice


Do not publish.